MARSTILLER, J.
 

 The Agency for Persons with Disabilities (“Agency”) petitions this Court for a writ of certiorari quashing the order of the trial court committing Travis Dallas to the Agency’s Mentally Retarded Defendant Program (“MRDP”) at Florida State Hospital. The Agency contends the court lacked authority to order forensic treatment for Mr. Dallas under Chapter 916, Florida Statutes, when the Agency had deemed him ineligible for community-based services under Chapter 393, Florida Statutes. The Agency further contends the evidence is insufficient to show Mr. Dallas’ mental retardation manifested before age 18 as required for commitment to the MRDP. Because we find the commitment order supported by the evidence and no basis in the law for the Agency to veto the court’s decision to commit Mr. Dallas to the Agency’s forensic facility, we deny the petition.
 

 I. BACKGROUND
 

 The Agency, under Chapter 393, Florida Statutes, provides an array of treatment, training, and support services to adults and children with developmental disabilities.
 
 See
 
 § 20.197, Fla. Stat. A developmental disability is “a disorder or syndrome that is attributable to retardation, cerebral palsy, autism, spina bifida, or Prader-Willi syndrome; that manifests before the age of 18; and that constitutes a substantial handicap that can reasonably be expected to continue indefinitely.” § 393.063(10), Fla. Stat. Expressing the importance of enabling persons with developmental disabilities to remain in their homes or to live in residential settings within their own communities rather than being placed in an institution, Chapter 393 sets out a range of community-based services the Agency may provide.
 
 See
 
 §§ 393.062, 393.066, Fla. Stat. To receive such services, an individual must apply in writing to the Agency which, in turn, initially determines whether the applicant is eligible for services. If the Agency denies eligibility, the applicant has the right to an administrative hearing to review the Agency’s decision.
 
 See
 
 §§ 393.065(3), 393.125(1), Fla. Stat. In addition to providing community-based services, the Agency also operates all relevant state institutional programs.
 
 See
 
 § 20.197, Fla. Stat.
 

 Chapter 916, Florida Statutes, provides for treatment or training of criminal defendants who are charged with a felony but deemed incompetent to proceed due to mental illness, mental retardation, or autism, or who have been acquitted of a felony by reason of insanity. § 916.105(1), Fla. Stat. Under this chapter, the circuit court determines whether a defendant is competent to proceed and further has the authority to involuntarily commit an incompetent defendant to a forensic facility if certain criteria are met.
 
 See
 
 §§ 916.115,
 
 *833
 
 et seq., Fla. Stat.
 
 [1]
 
 Part III of Chapter 916 sets out the framework for determining whether defendants with mental retardation or autism are competent to proceed and, if not, for committing them to a forensic facility to receive services to help them regain competency.
 
 [2]
 
 The court appoints experts to evaluate whether the defendant meets the definition of retardation or autism and, if so, whether the defendant is competent to proceed.
 
 See
 
 §§ 916.801, 916.3012(2), (8), Fla. Stat. In addition to reporting on the defendant’s mental condition and competence or lack thereof, the experts are required to “recommend[ ] training for the defendant to attain competence to proceed.” § 916.3012(4), Fla. Stat. (2009).
 

 II. FACTS AND PROCEDURAL HISTORY
 

 In November 2008, Mr. Dallas was arrested and charged with domestic battery and possession of cocaine with intent to distribute. Pursuant to Florida Rule of Criminal Procedure 3.210(b)
 
 [3]
 
 and sections 916.301 and 916.3012(2), Florida Statutes, the court appointed two experts to evaluate Mr. Dallas to determine whether he has mental retardation or autism and, if so, whether he is competent to proceed. The record does not reflect when or by whom the evaluation process was initiated, but Drs. Clifford A. Levin and Linda Abeles evaluated Mr. Dallas and submitted their reports on August 20, 2009, and October 12, 2009, respectively. Dr. Abeles had been selected by the Agency; it is unclear from the record whether the same was true for Dr. Levin, although the order on review suggests so. In any event, both experts opined that Mr. Dallas suffers mild to moderate mental retardation, is incompetent to proceed, and satisfies the criteria for involuntary commitment to the MRDP.
 

 Separate and apart from the criminal proceedings, Mr. Dallas, at some point, had applied to the Agency for services under Chapter 393. By letter dated November 3, 2009, the Agency notified him that his application to participate in the Developmental Disabilities Home and Community-Based Services or the Family and Supported Living waiver programs was denied. The letter explained that after reviewing his application and supporting documentation, the Agency concluded he does not have, or has not been determined to have, a developmental disability as defined in Chapter 393.
 

 At the January 6, 2010, competency hearing, the court indicated the Agency objected to Mr. Dallas’ potential placement in the MRDP based on its determination that he had not been diagnosed with mental retardation prior to age 18 and his consequent ineligibility for community-based services.
 
 [4]
 
 Prior to the hearing, the court had permitted the Agency to submit
 
 *834
 
 to the evaluating experts certain supplemental materials in the form of Mr. Dallas’ school records which, the Agency posited, “further supported” its earlier determination that Mr. Dallas does not have a developmental disability. At the hearing, Dr. Abeles testified that after reviewing the school records and comparing Mr. Dallas’ Wechsler Intelligence Scale test results as an eight year old to those she and Dr. Levin obtained, she was concerned his mental retardation did not manifest before age 18. Dr. Levin, on the other hand, testified the school records did not cause him to change either his diagnosis or his recommendation for placement into the MRDP, and that Mr. Dallas’ reading, writing, and math scores at age 17 were consistent with mental retardation in light of the intelligence testing he and Dr. Abeles had performed. Based on the experts’ evaluation reports and oral testimony, the court adjudicated Mr. Dallas incompetent to proceed due to mental retardation and found that he meets the criteria in section 916.302(1) for involuntary commitment. Accordingly, the court committed Mr. Dallas to the Agency and ordered that “the Agency shall retain and serve the defendant pursuant to FLA. STAT. § 916.302(2).”
 

 III. ANALYSIS
 

 The gravamen of the Agency’s petition for writ of certiorari is that the circuit court invaded the Agency’s discretionary executive branch authority to determine Mr. Dallas’ eligibility for services. The Agency reasons that because the Legislature empowered it in Chapter 393 to decide whether an applicant for services has a qualifying developmental disability, and because Chapter 916 imports the definition of retardation in section 393.063(31),
 
 [5]
 
 it has exclusive authority to determine a criminal defendant’s eligibility for the MRDP. Consequently, the Agency argues, the court departed from the essential requirements of law by committing Mr. Dallas to the MRDP when the Agency had deemed him ineligible for services under Chapter 393.
 

 Our review of Chapters 393 and 916 reveals no legislative intent to confer on the Agency authority to decide, under Chapter 916, whether a defendant has mental retardation or autism and is eligible for the MRDP. On the contrary, such authority lies plainly and exclusively with the circuit court, and the Agency’s subordinate role is to provide treatment and/or training designed to restore a defendant to competency.
 

 The scope of the Agency’s responsibility under Chapter 916 is clearly articulated in the following provisions. First, section 916.105(1) provides:
 

 It is the intent of the Legislature that the Department of Children and Family Services and the Agency for Persons with Disabilities, as appropriate, establish, locate, and maintain separate and secure forensic facilities and programs for the treatment or training of defendants who have been charged with a felony and who have been found to be incompetent to proceed due to their mental illness, mental retardation, or autism, or who have been acquitted of a felony by reason of insanity,
 
 and who, while still under the jurisdiction of the committing court,
 
 are committed to the department or agency under the provisions of this chapter.
 

 
 *835
 
 § 916.105(1), Fla. Stat. (2009) (emphasis added). Section 916.106 provides further that “[t]he [Agency] is responsible for training forensic clients who are developmentally disabled due to mental retardation or autism and have been determined incompetent to proceed.” § 916.106(1), Fla. Stat. (2009). Under section 916.301(2), the Agency selects at least one of the experts appointed by the court to evaluate a defendant pursuant to section 916.3012, thereby giving the Agency input into the court’s determinations regarding whether a defendant has mental retardation or autism, whether such a defendant is incompetent to proceed, and whether involuntary commitment is necessary. The court is authorized, upon adjudicating a defendant incompetent, to involuntarily commit the defendant for training if it is proven by clear and convincing evidence that:
 

 (a) The defendant has retardation or autism;
 

 (b) There is a substantial likelihood that in the near future the defendant will inflict serious bodily harm on himself or another person, as evidenced by recent behavior causing, attempting, or threatening such harm;
 

 (c) All available, less restrictive alternatives, including services provided in community residential facilities or other community settings, which would offer an opportunity for improvement of the condition have been judged to be inappropriate; and
 

 (d) There is a substantial probability that the retardation or autism causing the defendant’s incompetence will respond to training and the defendant will regain competency to proceed in the reasonably foreseeable future.
 

 § 916.302(1), Fla. Stat. (2009). If these criteria are met, the defendant
 
 “shall
 
 be committed to the [Agency], and the [Agency]
 
 shall
 
 retain and provide appropriate training for the defendant.” § 916.302(2)(a), Fla. Stat. (2009) (emphasis added). Moreover, “[a] defendant determined to be incompetent to proceed due to retardation or autism may be ordered by a circuit court into a forensic facility designated by the [Agency] for defendants who have mental retardation or autism.”
 
 [6]
 
 § 916.302(2)(b), Fla. Stat. (2009).
 

 The provisions delineating the Agency’s responsibilities are mandatory, and the Agency “has no discretion to comply or not comply with the statutory requirements.”
 
 Hadi v. Cordero,
 
 955 So.2d 17, 20 (Fla. 3d DCA 2006). Decidedly, there is no provision in Chapter 916 authorizing the Agency to determine whether a defendant has mental retardation or autism, or to veto an involuntary placement.
 
 [7]
 
 And we decline to infer such authority from the fact that Chapter 916 utilizes the definition of retardation in Chapter 393. To do otherwise would be to ignore the legislative intent expressed in the language of Chapter 916.
 
 See Wolf v. Progressive American Ins. Co.,
 
 34 So.3d 81, 81 (Fla. 1st DCA 2010) (courts have no need to look behind clear and unambiguous statutory language to find legislative intent). That said, if, as in this ease, the Agency previously has deemed an individual ineligible for services under Chapter 393, such a finding may be considered by the court in competency proceedings under Chapter 916. The court indeed did so here. However, the Agency presented no evidence supporting the Novem
 
 *836
 
 ber 3, 2009, denial letter it sent to Mr. Dallas, and although the Agency’s expert, Dr. Abeles, equivocated at the hearing, her evaluation report and that of Dr. Levin both conclude that Mr. Dallas meets the statutory definition of mental retardation and requires involuntary commitment to the MRDP. Moreover, Dr. Levin testified Mr. Dallas’ school records indicate that his condition manifested before age 18. This evidence supports the court’s commitment order, and the Agency must therefore provide Mr. Dallas the appropriate training to help him regain competency.
 
 See Hadi.
 

 The petition for writ of certiorari is DENIED.
 

 KAHN and ROWE, JJ., Concur.
 

 [1]
 

 .
 
 See generally
 
 Fla. R.Crim. P. 3.210, 3.211, and 3.212.
 

 [2]
 

 . Part II of Chapter 916 pertains to defendants with mental illness.
 

 [3]
 

 .
 

 Rule 3.210. Incompetence to Proceed: Procedure for Raising the Issue
 

 [[Image here]]
 

 (b) Motion for Examination. If, at any material stage of a criminal proceeding, the court of its own motion, or on motion of counsel for the defendant or for the state, has reasonable ground to believe that the defendant is not mentally competent to proceed, the court shall immediately enter its order setting a time for a hearing to determine the defendant’s mental condition ... and shall order the defendant to be examined by no more than 3, nor fewer than 2, experts prior to the date of the hearing. Attorneys for the state and the defendant may be present at the examination.
 

 [4]
 

 . Mr. Dallas was 35 years old when evaluated by Drs. Levin and Abeles.
 

 [5]
 

 .
 
 See
 
 § 916.106(15), Fla. Stat. (referring to section 393.063 for definition of retardation). " 'Retardation' means significantly subaver-age general intellectual functioning existing concurrently with deficits in adaptive behavior that manifests before the age of 18 and can reasonably be expected to continue indefinitely.” § 393.063(31), Fla. Stat. (2009).
 

 [6]
 

 . The MRDP is the only forensic facility the Agency operates.
 

 [7]
 

 . Notably, in response to a query from the court at oral argument, counsel for the Agency indicated it would be unlikely the Agency would seek to override a determination that a defendant
 
 does not
 
 meet the criteria for involuntary commitment to the MRDP.