# Supreme Court of Florida

_____

No. SC16-2182
_____

**RICHARD DELISLE,**
Petitioner,

vs.

**CRANE CO., et al.,**
Respondents.

October 15, 2018

QUINCE, J.

Richard DeLisle seeks review of the decision of the Fourth District Court of

Appeal in *Crane Co. v. DeLisle*, 206 So. 3d 94 (Fla. 4th DCA 2016), on the ground

that it expressly and directly conflicts with a decision of this Court on a question of

law.[1] We have jurisdiction. *See* art. V, § 3(b)(3), Fla. Const.

---

1. We reject the argument that the Fourth District's decision cannot conflict
with *Marsh v. Valyou*, 977 So. 2d 543 (Fla. 2007), because it construes an earlier
version of the statute. *Marsh* reaffirmed a procedural rule of the Court that the
Legislature has limited authority to repeal. Indeed, *Marsh* did not construe section
90.702, Florida Statutes (2007), because the test established by *Frye v. United
State*, 293 F. 1013 (D.C. Cir. 1923), was not codified within and, in fact,
contradicted it. Accordingly, the conflict between *Crane* and *Marsh* is properly
before this Court for our review.

The facts of this case were described in the Fourth District's opinion as follows:

After developing mesothelioma, DeLisle filed a personal injury action against sixteen defendants, claiming that each caused him to be exposed to asbestos. He alleged negligence and strict liability under failure-to-warn and design-defect theories. Of these defendants, DeLisle proceeded to trial only against Crane, Lorillard Tobacco Co., and Hollingsworth & Vose Co. ("H & V").

At trial, DeLisle presented evidence that he was exposed to asbestos fibers from sheet gaskets while working at Brightwater Paper Co. between 1962 and 1966. Crane, a valve and pump manufacturer, used "Cranite" sheet gaskets containing chrysotile asbestos fibers. DeLisle also testified that he smoked Original Kent cigarettes with asbestos-containing "Micronite" filters from 1952 to 1956. These cigarettes were produced by Lorillard's predecessor, and the filters were supplied by a former subsidiary of H & V. The filters contained crocidolite asbestos. In addition to Cranite gaskets and Kent cigarettes, DeLisle testified that he was exposed to asbestos-containing products from the following nonparty defendants: Garlock Sealing Technologies, LLC; A.W. Chesterton Co.; Ford Motor Co.; Honeywell International, Inc., f/k/a Allied Signal, as successor in interest to Allied Corp., as successor in interest to The Bendix Corp.; Georgia-Pacific LLC, f/k/a Georgia-Pacific Corp.; Goulds Pumps, Inc.; Union Carbide Corp.; Brightwater; and Owens-Corning Fiberglass.

Lorillard contested DeLisle's use of Kent cigarettes. DeLisle testified that he smoked on average a pack of Kent cigarettes a day from junior high school until he enlisted in the army in 1957. Two of his high school friends, however, did not recall him smoking, and his former wife testified that by the late 1960's, DeLisle was only smoking unfiltered cigarettes.

The parties hotly disputed causation, and even DeLisle's own experts did not agree on which products produced sufficient exposure to asbestos to constitute a substantial contributing factor to DeLisle's disease. Although all of DeLisle's experts agreed that the crocidolite asbestos in the Kent filters was a causative factor, they disagreed as to whether the other products were substantial contributing factors.

- 2 -

Appellees challenged each expert's opinions under section 90.702, Florida Statutes, which adopted the *Daubert* test for expert testimony. DeLisle introduced the causation expert opinions of Drs. James Dahlgren, James Millette, James Crapo, and James Rasmuson. Lorillard and H & V unsuccessfully moved to exclude their testimony, as well as any testimony regarding experiments conducted by Dr. William Longo. Dr. Dahlgren is a toxicologist who testified as to causation. Dr. Millette is an environmental scientist who tested asbestos-containing products for fiber release. Dr. Crapo, a pulmonologist, reviewed studies by both Dr. Longo and Dr. Millette to determine that Kent cigarettes would be a substantial contributing factor to mesothelioma. Dr. Rasmuson, an industrial hygienist, relied on Dr. Longo's testing to opine on DeLisle's exposure. Following *Daubert* hearings, the trial court admitted each expert's testimony.

Before the jury, Dr. Dahlgren opined that "every exposure" above background levels to friable, inhaled asbestos—regardless of product, fiber type, and dose—would be considered a substantial contributing factor to DeLisle's mesothelioma. In contrast, Dr. Rasmuson testified that low-level exposures to chrysotile asbestos would not increase the risk of mesothelioma. Dr. Crapo testified similarly to Dr. Rasmuson as to low-level chrysotile asbestos.

Crane, Lorillard, H & V, and DeLisle all moved for directed verdicts, and DeLisle sought to exclude any *Fabre* defendants from the verdict form. The court denied the motions for directed verdict and determined that Brightwater, DeLisle's former employer, and Owens-Corning, which manufactured asbestos-containing products that DeLisle had worked with at Brightwater, should be included on the verdict form. The court excluded the remaining nonparty defendants as *Fabre* defendants.

During the jury charge conference, Lorillard and H & V asked the trial court to instruct the jury on the threshold issue of whether DeLisle ever smoked Kent cigarettes. DeLisle opposed the instruction. The court denied the proposed instruction, reasoning that the issue was "subsumed in the [standard] instruction."

Following three days of deliberation, the jury awarded DeLisle $8 million in damages and apportioned fault as follows:
- Crane: 16%
- Lorillard: 22%
- H & V: 22%
- Brightwater: 20%

• Owens-Corning: 20%

After trial, Crane, Lorillard, and H & V variously moved for a judgment notwithstanding the verdict, judgment in accordance with their motions for directed verdict, a new trial, or, in the alternative, for a remittitur. The trial court denied the motions. The court then entered a final judgment awarding DeLisle $8 million in past and future non-economic compensatory damages, apportioned to Crane, Lorillard, and H & V based on the jury's distribution of fault.

*Crane Co. v. DeLisle*, 206 So. 3d 94, 98-100 (Fla. 4th DCA 2016) (footnotes omitted). Crane appealed the trial court's denial of its motions for directed verdict and judgment notwithstanding the verdict and the trial court's admission of expert causation testimony among other issues. *Id.* at 100. R.J. Reynolds also appealed the admission of expert testimony and both parties appealed the award as excessive. *Id.*

The Fourth District reviewed the admission of the testimony of the experts under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and found that the trial court "failed to properly exercise its gatekeeping function as to Drs. Dahlgren, Crapo, and Rasmuson." *Id.* The Fourth District reversed for a new trial for R. J. Reynolds and reversed and remanded for entry of a directed verdict for Crane. *Id.* at 111-12. DeLisle sought review by this Court, which was granted.

The Florida Legislature and the Florida Supreme Court have worked in tandem for nearly forty years to enact and maintain codified rules of evidence. This arrangement between the branches to avoid constitutional questions of separation of powers continued uninterrupted from the Evidence Code's inception

- 4 -

until 2000. In the instant case, we are asked to determine whether chapter 2013-107, section 1, Laws of Florida, which revised section 90.702, Florida Statutes (2015), and which we previously declined to adopt, to the extent it was procedural, infringes on this Court's rulemaking authority. We find that it does. Therefore, we reverse the Fourth District and remand for reinstatement of the final judgment.

The Florida Legislature enacted the first codified rules of evidence in 1976. Ch. 76-237, at 556, Laws of Florida. In 1979, we adopted the Florida Evidence Code, to the extent that the code was procedural. *See In re Fla. Evidence Code*, 372 So. 2d 1369 (Fla.), *clarified*, *In re Fla. Evidence Code*, 376 So. 2d 1161 (Fla. 1979). We recognized that "[r]ules of evidence may in some instances be substantive law and, therefore, the sole responsibility of the legislature. In other instances, evidentiary rules may be procedural and the responsibility of this Court." *Id.* at 1369. We therefore chose to adopt the rules, "[t]o avoid multiple appeals and confusion in the operation of the courts caused by assertions that portions of the evidence code are procedural and, therefore, unconstitutional because they had not been adopted by this Court under its rule-making authority." *Id.* Since then, we have traditionally continued to adopt the code, to the extent it is procedural, to avoid the issue of whether the Evidence Code is substantive in nature and therefore within the province of the Legislature or procedural in nature and therefore within the province of this Court. *See, e.g.*, *In re Amends. to the Fla. Evidence Code*, 53

So. 3d 1019 (Fla. 2011); *In re Amends. to the Fla. Evidence Code*, 960 So. 2d 762 (Fla. 2007); *In re Amends. to the Fla. Evidence Code–Section 90.104*, 914 So. 2d 940 (Fla. 2005); *Amends. to the Fla. Evidence Code*, 891 So. 2d 1037 (Fla. 2004); *In re Amends. to Fla. Evidence Code*, 825 So. 2d 339 (Fla. 2002); *In re Fla. Evidence Code*, 675 So. 2d 584 (Fla. 1996); *In re Fla. Evidence Code*, 638 So. 2d 920 (Fla. 1993); *In re Amend. of Fla. Evidence Code*, 497 So. 2d 239 (Fla. 1986); *In re Amend. of Fla. Evidence Code*, 404 So. 2d 743 (Fla. 1981).

Until 2000, the working arrangement between the Legislature and the Florida Supreme Court remained intact. However, in *In re Amendments to the Florida Evidence Code*, 782 So. 2d 339 (Fla. 2000), this Court for the first time declined to adopt, to the extent they were procedural, amendments to section 90.803, Florida Statutes (1997). *Id.* (declining to adopt chapter 98-2, section 1, Laws of Florida, amending section 90.803(22), Florida Statutes, which allows the admission of former testimony although the declarant is available as a witness, in part because of concerns about its constitutionality). We then considered the constitutionality of the provision in *State v. Abreu*, 837 So. 2d 400 (Fla. 2003), determining that the revised statute was unconstitutional because it infringed on a defendant's right to confront witnesses. *Id.* at 406.

Since then, we have only rarely declined to adopt a statutory revision to the Evidence Code. *See, e.g., In re Amends. to the Fla. Evidence Code*, 210 So. 3d

- 6 -

1231 (Fla. 2017) (declining to adopt chapter 2013-107, sections 1-2, Laws of Florida); *In re Amends. to the Fla. Evidence Code*, 144 So. 3d 536 (Fla. 2014) (declining to adopt chapter 2011-183, section 1, Laws of Florida, creating section 90.5021, Florida Statutes (2012), which establishes a "fiduciary lawyer-client privilege," and declining to adopt chapter 2011-233, section 10, Laws of Florida, creating section 766.102(12), Florida Statutes (2012), which pertains to a medical malpractice expert witness provision). Since its inception, therefore, the Florida Evidence Code has been considered neither purely substantive nor purely procedural. *See In re Fla. Evidence Code*, 372 So. 2d 1369, 1369 (Fla.), *clarified,* 376 So. 2d 1161 (Fla. 1979) ("Rules of evidence may in some instances be substantive law and, therefore, the sole responsibility of the legislature. In other instances, evidentiary rules may be procedural and the responsibility of this Court.").

Generally, the Legislature has the power to enact substantive law while this Court has the power to enact procedural law. *See Allen v. Butterworth*, 756 So. 2d 52, 59 (Fla. 2000). Substantive law has been described as that which defines, creates, or regulates rights—"those existing for their own sake and constituting the normal legal order of society, i.e., the rights of life, liberty, property, and reputation." *In re Fla. Rules of Criminal Procedure*, 272 So. 2d 65, 65 (Fla. 1972) (Adkins, J., concurring). Procedural law, on the other hand, is the form, manner,

or means by which substantive law is implemented.  *Id.* at 66 (Adkins, J.,

concurring).  Stated differently, procedural law "includes all rules governing the

parties, their counsel and the Court throughout the progress of the case from the

time of its initiation until final judgment and its execution."  *Allen v. Butterworth*,

756 So. 2d 52, 60 (Fla. 2000) (quoting *In re Rules of Criminal Procedure*, 272 So.

2d at 66 (Adkins, J., concurring)).  "It is the method of conducting litigation

involving rights and corresponding defenses."  *Haven Federal Savings & Loan*

*Ass'n v. Kirian*, 579 So. 2d 730, 732 (Fla. 1991) (citing *Skinner v. City of Eustis*, 2

So. 2d 116 (Fla. 1941)).

The distinction between substantive and procedural law, however, is not

always clear.  For example, a law is considered to be substantive when it both

creates and conditions a right.  *See State v. Raymond*, 906 So. 2d 1045, 1049 (Fla.

2005); *Jackson v. Fla. Dep't of Corr.*, 790 So. 2d 381, 383-84 (Fla. 2000) (holding

that the Legislature could properly limit the right of indigents to proceed without

payment of costs); *Caple v. Tuttle's Design-Build, Inc.*, 753 So. 2d 49, 54 (Fla.

2000) (holding that a statute creating the right to petition for mortgage payment

receipts during foreclosure proceedings and establishing the grounds for granting

such a petition was constitutional); *School Bd. of Broward Cty. v. Price*, 362 So. 2d

1337 (Fla. 1978) (holding that section 230.23(9)(d)(2), Florida Statutes (1977), set

the bounds of a substantive right conditioned on a waiver and was therefore not an

unconstitutional infringement of the Court's power to set procedural rules).

However, when procedural aspects overwhelm substantive ones, the law may no longer be considered substantive. *Raymond*, 906 So. 2d at 1049.

Here, the Legislature sought to adopt *Daubert* and cease the application of *Frye* to expert testimony. In *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), a short opinion, the Court of Appeals for the District of Columbia pronounced that the line between when a scientific discovery or principle crosses from experimental to demonstrable is indiscernible so that courts would do better "admitting expert testimony deduced from a well-recognized scientific principle or discovery." *Id.* at 1014. Further, the Court explained, "the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs." *Id.* This rule—that expert testimony should be deduced from generally accepted scientific principles—has been the standard in Florida cases and, today, we reaffirm that it is still the standard. *See, e.g., Kaminski v. State*, 63 So. 2d 339, 340 (Fla. 1952) (recognizing *Frye*'s rejection of systolic blood pressure deception tests as having "not yet gained such standing and scientific recognition among physiological and psychological authorities as would justify the courts in admitting expert testimony deduced from the discovery, development, and experiments thus far made.") (quoting *Frye*, 293 F. at 1014); *Bundy v. State*, 471 So. 2d 9, 13 (Fla. 1985) (describing the *Frye* test as one in

which "the results of mechanical or scientific testing are not admissible unless the testing has developed or improved to the point where experts in the field widely share the view that the results are scientifically reliable as accurate").

Considering the admissibility of posthypnotic testimony, we formally adopted *Frye*, determining:

> [T]he test espoused in *Frye* properly addresses the issue of the admissibility of posthypnotic testimony. We acknowledge that the *Frye* rule has come under some criticism since its inception in 1923 as too harsh and inflexible; however, we believe that the problems associated with the other recognized judicial approaches foreclose their use.

*Stokes v. State*, 548 So. 2d 188, 195 (Fla. 1989) (citation omitted) (citing *Bundy v. State*, 471 So. 2d 9 (Fla. 1985); *Bundy v. State*, 455 So. 2d 330 (Fla. 1984)).

Further, we noted:

> [A] courtroom is not a laboratory, and as such it is not the place to conduct scientific experiments. If the scientific community considers a procedure or process unreliable for its own purposes, then the procedure must be considered less reliable for courtroom use.

*Stokes*, 548 So. 2d at 193-94. We note that we adopted the *Frye* test irrespective of the Evidence Code, which was in place at the time.

In *Hadden v. State*, 690 So. 2d 573 (Fla. 1997), we rejected the argument that the Legislature's enactment and this Court's subsequent adoption of the Evidence Code replaced the *Frye* standard with the balancing test that existed in

the code.  *Hadden*, 690 So. 2d at 577 (citing *Daubert*, 509 U.S. 579; *Stokes*, 548 So. 2d 188).  We stated:

> The reasons for our adherence to the *Frye* test announced in *Stokes* continue today.  Moreover, we firmly hold to the principle that it is the function of the court to not permit cases to be resolved on the basis of evidence for which a predicate of reliability has not been established.  Reliability is fundamental to issues involved in the admissibility of evidence.  It is this fundamental concept which similarly forms the rules dealing with the admissibility of hearsay evidence.  As a rule, hearsay evidence is considered not sufficiently reliable to be admissible, and its admission is predicated on a showing of reliability by reason of something other than the hearsay itself.  *See* § 90.802, Fla. Stat. (1995) ("Except as provided by statute, hearsay evidence is inadmissible.").  This same premise underlies why novel scientific evidence is to be *Frye* tested.  Novel scientific evidence must also be shown to be reliable on some basis other than simply that it is the opinion of the witness who seeks to offer the opinion.  In sum, we will not permit factual issues to be resolved on the basis of opinions which have yet to achieve general acceptance in the relevant scientific community; to do otherwise would permit resolutions based upon evidence which has not been demonstrated to be sufficiently reliable and would thereby cast doubt on the reliability of the factual resolutions.

*Hadden*, 690 So. 2d at 578.

After decades of the federal courts' applying *Frye*, Congress revised the Federal Rules of Evidence.  The revision was addressed by the United States Supreme Court in 1993.  In *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), the United States Supreme Court determined the appropriate standard for admitting expert scientific testimony in a federal trial.  *Id.* at 582.  The Supreme

- 11 -

Court ultimately agreed with the petitioners that *Frye* had been superseded by the adoption of the revised Federal Rules of Evidence. *Id.* at 587.

The Court explained its decision, stating, "[I]n order to qualify as 'scientific knowledge,' an inference or assertion must be derived by the scientific method." *Daubert*, 509 U.S. at 590. The inquiry derived from *Daubert* is a flexible one, as emphasized by the Supreme Court. *Id.* at 594. "The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595. The Supreme Court in *Daubert* opined that the change in rule 702 was necessary to permit scientifically valid and relevant evidence, summarizing:

> "General acceptance" is not a necessary precondition to the admissibility of scientific evidence under the Federal Rules of Evidence, but the Rules of Evidence—especially Rule 702—do assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. Pertinent evidence based on scientifically valid principles will satisfy those demands.

*Id.* at 597. In short, in *Daubert*, the United States Supreme Court found that otherwise probative and scientifically valid evidence was being excluded under the *Frye* standard and the change in rule 702 was necessary to permit additional relevant evidence to be considered even if it was based on scientific methods or principles that were not yet generally accepted.

Nevertheless, in *Brim v. State*, 695 So. 2d 268 (Fla. 1997), we unanimously emphasized that we continue to apply *Frye* to "guarantee the reliability of new or

novel scientific evidence." *Id.* at 271 (citing *Stokes v. State*, 548 So. 2d 188 (Fla. 1989)). We opined:

> Despite the federal adoption of a more lenient standard in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), we have maintained the higher standard of reliability as dictated by *Frye*. *E.g., Ramirez v. State*, 651 So. 2d 1164 (Fla. 1995). This standard requires a determination, by the judge, that the basic underlying principles of scientific evidence have been sufficiently tested and accepted by the relevant scientific community. To that end, we have expressly held that the trial judge must treat new or novel scientific evidence as a matter of admissibility (for the judge) rather than a matter of weight (for the jury).

*Brim*, 695 So. 2d at 271-72 (footnote omitted).

Following our repeated affirmations of the *Frye* rule, in 2013 the Legislature amended section 90.702 to incorporate *Daubert* in the Florida Rules of Evidence. The amendment revised the statute to read as follows:

> 90.702    Testimony by experts.—If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion or otherwise, if:
>
> (1)    The testimony is based upon sufficient facts or data;
>
> (2)    The testimony is the product of reliable principles and methods; and
>
> (3)    The witness has applied the principles and methods reliably to the facts of the case.

§ 90.702, Fla. Stat. (as amended by ch. 2013-107, § 1, Laws of Fla.).

Article II, section 3 of the Florida Constitution prohibits one branch of government from exercising any of the powers of the other branches. Further,

article V, section 2(a) provides this Court the exclusive authority to "adopt rules for the practice and procedure in all courts." Art. V, § 2(a), Fla. Const. The Legislature may only repeal the rules of this Court by "general law enacted by two-thirds vote of the membership of each house of the legislature." *Id.* First, the amendment was not written to repeal *Frye* or *Marsh* but to overrule this Court's decision. *See* Fla. HB 7015, preamble (2013) (available at www.flsenate.gov/Session/Bill/2013/7015) ("the Florida Legislature intends to prohibit in the courts of this state pure opinion testimony as provided in *Marsh . . .* "). The vote here did not meet the requirement. The House passed the bill with a majority, 70 to 41 (or 58.3% of the membership). The Senate passed the bill with more than the necessary two-thirds vote, 30 to 9 (or 75% of the membership). *Id.*

We have previously found that the Legislature exceeded its authority in adopting statutes we found to infringe on the authority of this Court to determine matters of practice or procedure. For example, in *Massey v. David*, 979 So. 2d 931 (Fla. 2008), we considered the constitutionality of section 57.071(2), Florida Statutes (1999), finding that the section was purely procedural because the substantive right it purported to create existed in a different section of the statutes. *Id.* at 935-36. We determined that "because section 57.071(2) only delineates the steps that a party must fulfill (i.e., the proverbial hoops through which a party must

jump) to be entitled to an award of expert witness fees as costs, the statute is unquestionably a procedural one which conveys no substantive right at all." *Id.* at 940 (citing *Raymond*, 906 So. 2d at 1049). Likewise, we found the time requirements established by the Legislature in section 44.102, Florida Statutes (1993), to be unconstitutional, finding that the section "sets forth only procedural requirements, [and therefore] intrudes upon the rule-making authority of the Supreme Court." *Knealing v. Puleo*, 675 So. 2d 593, 596 (Fla. 1996) (citing art. V, § 2(a), Fla. Const.).

In *Jackson v. Florida Department of Corrections*, 790 So. 2d 381 (Fla. 2001), we explained that a statute can have both substantive provisions and procedural requirements and "[i]f the procedural requirements conflict with or interfere with the procedural mechanisms of the court system, they are unconstitutional under both a separation of powers analysis, and because [they intrude upon] the exclusive province of the Supreme Court pursuant to the rulemaking authority vested in it by the Florida Constitution." *Id.* at 384 (citing art. II, § 3, art. V, § 2, Fla. Const.; *State v. Garcia*, 229 So. 2d 236, 238 (Fla. 1969)). We noted that the copy requirement contained in the rule provided an extra and unnecessary burden on the operation of this Court. *Id.* at 386.

In *State v. Raymond*, 906 So. 2d 1045 (Fla. 2005), we determined that section 907.041(4)(b), Florida Statutes (2000), providing that a person charged

with a dangerous crime was prohibited from receiving a nonmonetary pretrial release, was purely procedural and, therefore, an unconstitutional violation of the separation of powers clause. "It is a well-established principle that a statute which purports to create or modify a procedural rule of court is constitutionally infirm." *Id.* at 1048 (citing *Markert v. Johnston*, 367 So. 2d 1003 (Fla. 1978)). Further, "where there is no substantive right conveyed by the statute, the procedural aspects are not incidental; accordingly, such a statute is unconstitutional." *Id.* at 1049 (citing *Knealing*, 675 So. 2d 593).

Further, we determined that the Legislature's attempt to "specif[y] the precise moment during the judicial proceeding when a motor vehicle liability insurer may be formally recognized as the real party in interest" in section 627.7262, Florida Statutes (1977), was "an invasion of this Court's rulemaking authority." *Markert*, 367 So. 2d at 1005-06. However, in *VanBibber v. Hartford Accident & Indemnity Insurance Co.*, 439 So. 2d 880 (Fla. 1983), we considered the revised version of the same statute, and determined that there were "substantial differences between the two statutes." *Id.* at 882. Because of those differences, we determined that the Legislature substantively pronounced public policy overturning

this Court's pronouncement in *Shingleton v. Bussey*, 223 So. 2d 713 (Fla. 1969), and was therefore constitutional. *VanBibber*, 439 So. 2d at 883.[2]

Section 90.702, Florida Statutes, as amended in 2013, is not substantive. It does not create, define, or regulate a right. Indeed, while we have stated that the Florida Evidence Code contains both substantive and procedural rights, this statute is one that solely regulates the action of litigants in court proceedings. *See, e.g.*, *Glendening v. State*, 536 So. 2d 212, 215 (Fla. 1988) (determining that section 90.803(23), Florida Statutes (1985), concerning out-of-court statements, was procedural for the purposes of ex post facto analysis).

Our consideration of the constitutionality of the amendment does not end with our determination that the provision was procedural. For this Court to determine that the amendment is unconstitutional, it must also conflict with a rule of this Court. *See Haven Fed. Sav. & Loan Ass'n v. Kirian*, 579 So. 2d 730, 732–

---

2. We note, however, that in vigorous accompanying opinions, Justices Shaw and Boyd articulated reasons that public policy, alone, was insufficient to determine the substantive nature of a statutory provision. Justice Shaw, equally relevant to the instant case, was concerned with the rights of access to courts and would have found that the challenged statute denied "rights arising under article I, sections 9 and 21, of the Constitution of 1968." *Id.* at 885 (Shaw, J., concurring in part and dissenting in part). Justice Boyd would have continued to hold that the joinder of parties is a procedural matter pursuant to *Shingleton*. *VanBibber*, 439 So. 2d at 886 (Boyd, J., dissenting); *see also Smith v. Dep't of Ins.*, 507 So. 2d 1080, 1092 (Fla. 1987) (finding that statutes addressing the substantive rights of plaintiffs and defendants in civil litigation actions to recover damages did not encroach on the rulemaking authority of this Court).

33 (Fla. 1991) ("Where this Court promulgates rules relating to the practice and procedure of all courts and a statute provides a contrary practice or procedure, the statute is unconstitutional to the extent of the conflict.") (citing *Sch. Bd. v. Surette,* 281 So. 2d 481 (Fla. 1973), *receded from on other grounds* by *Sch. Bd. v. Price,* 362 So. 2d 1337 (Fla. 1978)); *see also Leapai v. Milton*, 595 So. 2d 12, 14 (Fla. 1992) (holding that section 45.061, Florida Statutes (1987), was not unconstitutional to the extent it did not conflict with Florida Rule of Civil Procedure 1.442 and stating that "statutes should be construed to effectuate the express legislative intent and all doubt as to the validity of any statute should be resolved in favor of its constitutionality" (quoting *McKibben v. Mallory*, 293 So. 2d 48 (Fla. 1974))). A procedural rule of this Court may be pronounced in caselaw. *See Sch. Bd. of Broward Cty. v. Surette*, 281 So. 2d 481, 483 (Fla. 1973), *receded from on other grounds* by *Sch. Bd. of Broward Cty. v. Price*, 362 So. 2d 1337 (Fla. 1978) ("Where rules and construing opinions have been promulgated by this Court relating to the practice and procedure of all courts and a statutory provision provides a contrary practice or procedure . . . the statute must fall.") While the Legislature purports to have pronounced public policy in overturning *Marsh*, we hold that the rule announced in *Stokes* and reaffirmed in *Marsh* was a procedural rule of this Court that the Legislature could not repeal by simple majority.

We recognize that *Frye* and *Daubert* are competing methods for a trial judge to determine the reliability of expert testimony before allowing it to be admitted into evidence. Both purport to provide a trial judge with the tools necessary to ensure that only reliable evidence is presented to the jury. *Frye* relies on the scientific community to determine reliability whereas *Daubert* relies on the scientific savvy of trial judges to determine the significance of the methodology used. With our decision today, we reaffirm that *Frye*, not *Daubert*, is the appropriate test in Florida courts.[3]

We have previously recognized that *Frye* is inapplicable to the vast majority of cases because it applies only when experts render an opinion that is based upon new or novel scientific techniques. *Marsh*, 977 So. 2d at 547 (citing *U.S. Sugar Corp. v. Henson*, 823 So. 2d 104, 109 (Fla. 2002). Further, we have stated that "a trial court 'has broad discretion in determining the range of the subjects on which an expert can testify, and the trial judge's ruling will be upheld absent a clear error.' " *Davis v. State*, 142 So. 3d 867, 872 (Fla. 2014) (quoting *Penalver v. State*, 926 So. 2d 1118, 1134 (Fla. 2006)); *see Hadden v. State*, 690 So. 2d 573,

---

3. We also note our concern that the amendment would affect access to courts much in the same way expressed by Justice Shaw in *VanBibber* by imposing an additional burden on the courts. The amici in this case have described the additional length and expense *Daubert* proceedings create. *See, e.g., Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-49 (1999).

581 (Fla. 1997) (stating that evidence found to be inadmissible under *Frye* does not

necessarily require reversal because the error may be harmless) (citing *Flanagan v.

State*, 625 So. 2d 827, 829-30 (Fla. 1993)).

The expert testimony in this case was properly admitted and should not have

been excluded by the Fourth District. As we stated in *Marsh*, medical causation

testimony is not new or novel and is not subject to *Frye* analysis. *Marsh*, 977 So.

2d at 549. Further, we have previously recognized that asbestos products "have

widely divergent toxicities, with some asbestos products presenting a much greater

risk of harm than others." *Celotex Corp. v. Copeland*, 471 So. 2d 533, 538 (Fla.

1985). Here, the trial court heeded our caution to "resist the temptation to usurp

the jury's role in evaluating the credibility of experts and choosing between

legitimate but conflicting scientific views." *Marsh*, 977 So. 2d at 549 (citing

*Castillo v. E.I. Du Pont De Nemours & Co., Inc.*, 854 So. 2d 1264, 1275 (Fla.

2003)). The Fourth District erred in disturbing the trial court's determination.

Next, R.J. Reynolds and Crane both challenged the trial court's denial of

remittitur. We conclude that the Fourth District's application of a dissenting

viewpoint[4] is inconsistent with our caselaw and, therefore, reject its reasoning.

_____

4. *Crane Co.*, 206 So. 3d at 111 (citing *R.J. Reynolds Tobacco Co. v. Townsend*, 90 So. 3d 307, 318 (Fla. 1st DCA 2012) (Wetherell, J., concurring in part and dissenting in part).

For the foregoing reasons, we quash the Fourth District's decision. Furthermore, because the causation of mesothelioma is neither new nor novel, the trial court's acceptance of the expert testimony was proper. We therefore remand to the Fourth District with instructions to remand to the trial court to reinstate the final judgment. We decline to address the remaining issues.

It is so ordered.

PARIENTE, LEWIS, and LABARGA, JJ., concur.
PARIENTE, J., concurs with an opinion, in which LABARGA, J., concurs.
LABARGA, J., concurs with an opinion, in which PARIENTE, J., concurs.
CANADY, C.J., dissents with an opinion, in which POLSTON and LAWSON, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

PARIENTE, J., concurring.

I fully concur with the majority's decision to remand for reinstatement of the final judgment and its conclusion that the 2013 legislative amendments to section 90.702, Florida Statutes ("the *Daubert* amendment"), infringe on this Court's rulemaking authority. I write separately to express my belief that the *Daubert*[5] amendment also has the potential to unconstitutionally impair civil litigants' right to access the courts. *See* art. I, § 21, Fla. Const.[6]

---

5. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

6. Our state constitution provides that "courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial, or

Determining the admissibility of evidence in a civil or criminal case is a quintessentially judicial function. *See Johnston v. State*, 863 So. 2d 271, 278 (Fla. 2003) ("A trial judge's ruling on the admissibility of evidence will not be disturbed absent an abuse of discretion."); *Cantore v. W. Boca Med. Ctr., Inc.*, 2018 WL 4235334, *3 (Fla. Apr. 26, 2018). This includes the admission of expert opinion testimony.

In deciding whether a particular expert's testimony is admissible, the trial court is guided by the rules of evidence, which require that the expert testimony "assist the trier of fact." § 90.702, Fla. Stat. (2017). Further, as part of its gatekeeping function, the trial court must, if challenged by a party, determine whether the probative value of the evidence is "substantially outweighed by the

---

delay." Art. I, § 21, Fla. Const. We have explained that "[t]his 'openness' and necessity that access be provided 'without delay' clearly indicate that a violation occurs if the statute obstructs or infringes that right to any significant degree." *Mitchell v. Moore*, 786 So. 2d 521, 527 (Fla. 2001). Additionally, because the "right to access is specifically mentioned in Florida's constitution . . . it deserves more protection than those rights found only by implication." *Id.*

Under this provision, this Court has concluded that certain statutes are unconstitutional because they restrict litigants' access to courts. *See, e.g.*, *Westphal v. City of St. Petersburg*, 194 So. 3d 311, 327 (Fla. 2016); *Mitchell*, 786 So. 2d 521. Justice Shaw reached this conclusion regarding a statute that provided "that an injured party has no beneficial interest in a liability policy until that person has first obtained a judgment against an insured." *VanBibber v. Hartford Accident & Indem. Ins. Co.*, 439 So. 2d 880, 882 (Fla. 1983). Justice Shaw believed the statute was unconstitutional, in part, because it "denie[d] or delay[ed] the rights of access to the courts" under the Florida Constitution. *Id.* at 883 (Shaw, J., concurring in part and dissenting in part).

- 22 -

danger of unfair prejudice." *Id.* § 90.403. However, once the trial court

determines that expert testimony will assist the trier of fact and is not unduly

prejudicial, the jury is entitled to hear the expert testimony. Any other approach, in

my view, reflects a mistrust of the jury system and the ability of jurors to weigh the

evidence.

## BACKGROUND

As the majority explains, *Frye*[7] has been the standard for determining the

admissibility of expert testimony in Florida for decades. *See* majority op. at 9.

Under *Frye,* "the burden is on the proponent of the evidence to prove the general

acceptance of both the underlying scientific principle and the testing procedures

used to apply that principle to the facts of the case at hand." *Ramirez v. State*, 651

So. 2d 1164, 1168 (Fla. 1995). Significantly, *Frye* applies only to "new or novel

scientific evidence." *Brim v. State*, 695 So. 2d 268, 271 (Fla. 1997).

In 1993, the United States Supreme Court held that the Federal Rules of

Evidence superseded the *Frye* "general acceptance" test for the admission of expert

testimony in federal trials. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S.

579, 588-89 (1993). Under the federal rules, instead of determining whether the

basis for an expert's opinion was generally accepted in the relevant scientific

---

7. *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).

community, the Court explained that "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589. The Court noted that this new standard was intended to be flexible. *See id.* at 594 ("The inquiry envisioned by [the federal rules] is, we emphasize, a flexible one."); *see also Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311 (11th Cir. 1999) ("The gatekeeper role [under *Daubert*] is not intended to supplant the adversary system or the role of the jury."); Martin L.C. Feldman, *May I Have the Next Dance, Mrs.* Frye*?*, 69 Tul. L. Rev. 793, 802-03 (1995) ("The Court declared that the *Frye* test was superseded by the Federal Rules of Evidence, and thereby outwardly relaxed the standard for admission of scientific evidence.").

Several years after *Daubert*, the United States Supreme Court concluded that a trial judge *may* consider additional factors when determining whether expert testimony meets the *Daubert* standard, including whether a particular theory or technique had been or could be tested, whether it had been subjected to peer review, and whether a particular technique had a known or potential rate of error. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). Consistent with its intention that the *Daubert* standard be flexible, the Court explicitly emphasized the word "may." *Id.*

Despite the Supreme Court's intention that *Daubert* be applied flexibly, it has been observed that, in actuality, "[t]he gatekeeping role bestowed upon the

judiciary has blocked more court access than it has enabled." Allan Kanner & M. Ryan Casey, Daubert *and the Disappearing Jury Trial*, 69 U. Pitt. L. Rev. 281, 283 (2007). Particularly relevant in this case, defendants often exploit the requirements of *Daubert* as a sword against plaintiffs' attorneys. *See id.* at 283-84. Others have written that *Daubert* has "produced a minefield clogged with '*Daubert* hearings' that are more lengthy, technical, and diffuse than anything that preceded them." David Crump, *The Trouble with* Daubert-Kumho*: Reconsidering the Supreme Court's Philosophy of Science*, 68 Mo. L. Rev. 1, 1 (2003).

*Daubert* has limited access to courts in two significant ways. First, *Daubert* applies in substantially more cases than *Frye*. As stated previously, unlike *Frye*, which applies only to testimony which is predicated on new or novel scientific evidence, *Daubert* applies to all expert testimony. *Kumho*, 526 U.S. at 147 (stating that *Daubert* "applies to all expert testimony"). Therefore, more litigants are exposed to the risk of exclusion of their experts' testimony under *Daubert*.

Second, in addition to expanding the areas of expert testimony that are subject to challenge, the *Daubert* analysis involves more than just the *Frye* consideration of whether "the basic underlying principles of scientific evidence have been sufficiently tested and accepted by the relevant scientific community." *Brim*, 695 So. 2d at 272. Under *Daubert*, it is the trial judge who must ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task

at hand." 509 U.S. at 597. As explained previously, this is a multi-factor consideration. *Id.* at 593-94. In other words, as the majority states, "*Frye* relies on the scientific community to determine reliability whereas *Daubert* relies on the scientific savvy of trial judges . . . ." Majority op. at 19. The difference as to who makes this reliability determination is not inconsequential, as trial judges, who typically do not possess the requisite training or experience in the expert's field, must fully understand the science before they can even attempt to determine whether it is admissible under *Daubert*.

## THE *DAUBERT* AMENDMENT

In 2013, the Legislature formally adopted the *Daubert* standard. *See* ch. 2013-107, Laws of Fla. The Florida Bar's Code and Rules of Evidence Committee ("the Committee") recommended that we reject the amendment to the extent it was procedural when we considered the Committee's regular-cycle report last year, citing "grave constitutional concerns," in particular, that the adoption of the *Daubert* amendment would "deny[] access to the courts." *In re Amends. to Fla. Evidence Code*, 210 So. 3d 1231, 1239 (Fla. 2017).

In addition to the constitutional concerns, the Committee believed that the amendment "would overburden the courts and impede the ability to prove cases on

their merits." Comm. Report at 10.[8] Citing numerous federal cases, the

Committee explained that, because *Daubert* covers more subject areas and

involves a multi-factorial analysis to determine admissibility, versus *Frye's* simple

"general acceptance" inquiry, "federal courts commonly must conduct multi-day

*Daubert* hearings at substantial cost in time and money." *Id.* The Committee

stated further:

> Florida's judges have not been provided the level of resources
> and time available to their federal counterparts. The impact of
> *Daubert* procedures in Florida state courts would only worsen this
> disparity.
>
> Litigants in all kinds of cases also bear an increased burden.
> Having to provide a lengthy expert report or answers to
> interrogatories, then have an expert witness prepare to testify in a
> deposition and a *Daubert* hearing, then defend a *Daubert* motion, all
> with the hope of being allowed to do it all over again in trial, is very
> expensive. Daubert "represents another procedural obstacle, another
> motion, another hearing, and another potential issue on appeal, all
> causing more delay and expense."
>
> During [Committee] discussions, concerns were raised that
> litigation offering expert testimony under *Daubert* increases litigation
> costs, a prospect that only wealthy litigants can bear. Family and
> juvenile cases were raised as an example, since these cases often
> involve parties with lesser financial capabilities who must somehow
> participate in *Daubert* hearings or surrender their rights on the merits
> due to a lack of resources to fund these evidentiary fights.
> Contingency cases were mentioned as another example, in cases
> where some litigants will be unable to find counsel to represent them
> due to increased expenses associated with the use of experts. A final

---

8. Code & Rules of Evidence Comm. Three-Year Cycle Report, *In re Amends. to Fla. Evidence Code*, 210 So. 3d 1231 (Fla. 2017) (No. SC16-181) (cited herein as "Comm. Report").

example was presented in hourly rate cases when many litigants may be unable to afford to pursue the merits of their claims because of the expense of *Daubert* hearings guaranteed to come.

Comm. Report at 11-12 (citation omitted).[9]

The concerns raised by the Committee do not merely exist in the abstract. Attorney Dan Cytryn, a lawyer with "more than 35 years [of experience] almost exclusively in the area of personal injury," urged this Court not to adopt the amendment because *Daubert* has made "complex and moderately complex cases . . . more expensive to try." Comment by Dan Cytryn at 1, *In re Amends. to Fla. Evidence Code*, 210 So. 3d 1231 (No. SC16-181). Cytryn explained that, after *Daubert*, his law firm "has taken a much closer look at cases *that are meritorious*, and perhaps are worth under $100,000, but require litigation. [They] have turned down several meritorious cases because of the additional costs and time restraints

---

9. A joint comment filed by past presidents of The Florida Bar and other members of The Florida Bar echoed this concern:

> As many of the signers of this comment know personally, the *Daubert* Law has overburdened and, if adopted by this Court, will continue to overburden our already overstrained and overworked court system. The *Daubert* Law has resulted, and will result, in unwarranted delays, costs, and expenses in the administration of justice in every kind of case. These delays, costs, and expenses will be borne not only by the courts but by the litigants and will tend to have the most adverse impact on those who lack financial resources.

Joint Comment by Past Presidents of The Fla. Bar & Other Members of The Fla. Bar at 5, *In re Amends. to Fla. Evidence Code*, 210 So. 3d 1231 (No. SC16-181).

that *Daubert* implicates." *Id.* at 2. While the impact on the workload of the trial courts or the difficulty in finding a lawyer should not be the sole consideration for determining whether a rule of procedure should be adopted, if adoption of the rule is at the expense of litigants' constitutional right to access the courts, then the impact on the workload provides a compelling reason to reject the rule.

The National Association of Criminal Defense Lawyers ("NACDL") raised competing concerns in the battle between *Frye* and *Daubert* when we considered the *Daubert* amendment last year. The NACDL urged this Court to adopt the amendment, arguing that the *Frye* standard often permits the admission of "flawed scientific evidence." Comment by the NACDL at 2, *In re Amends. to Fla. Evidence Code*, 210 So. 3d 1231 (No. SC16-181). The NACDL contended that under *Daubert*, "the trial court can truly fulfill its critical role as a gatekeeper to ensure that expert testimony is the product of reliable scientific principles and methodology." *Id.* While I understand the concerns articulated by the NACDL, I am not persuaded that the proper application of the *Frye* standard is unable to sufficiently guard against these concerns.

As this Court explained in *Ramirez v. State*, 810 So. 2d 836 (Fla. 2001), when applying *Frye*, a court is not required to determine that evidence is "generally accepted" on the basis of a mere "nose count" of experts in the field. *Id.* at 844. To the contrary, we explained that the court "may peruse disparate

sources—e.g., expert testimony, scientific and legal publications, and judicial opinions—*and decide for itself* whether the theory in issue has been 'sufficiently tested and accepted by the relevant scientific community.' " *Id.* (emphasis added) (footnote omitted) (quoting *Brim*, 695 So. 2d at 272). We further explained that "[a] bald assertion by the expert that his deduction is premised upon well-recognized scientific principles is inadequate to establish its admissibility if the witness's application of these principles is untested and lacks indicia of acceptability." *Id.*

In that case, although several of the State's experts testified that the underlying principle of a particular method concerning knife mark evidence was generally accepted in the field, we concluded that such testimony "standing alone is insufficient to establish admissibility under *Frye* in light of the fact that [the method's] testing procedure possesse[d] none of the hallmarks of acceptability that apply in the relevant scientific community to [that] type of evidence." *Id.* at 849. Likewise, in *Hadden v. State*, 690 So. 2d 573 (Fla. 1997), we concluded that a psychologist's opinion "that a child exhibits symptoms consistent with what has come to be known as 'child sexual abuse accommodation syndrome,' " which the State sought to admit, "may not be used in a criminal prosecution for child abuse" because it was not generally accepted by a majority of experts in the field. *Id.* at 575.

I acknowledge that neither *Frye* nor *Daubert* is a perfect standard that will seem fair to all litigants in every proceeding.  However, this Court's case law makes clear that a proper and thorough application of *Frye* allows the trial judge to inquire beyond bare assertions of general acceptance.  *Daubert*, on the other hand, has the potential to infringe on litigants' constitutional right to access the courts.  In addition to the time-consuming and potentially cost-prohibitive expense created by *Daubert* hearings, as well as the onerous barriers to admitting expert testimony, the jury's role in evaluating the merits of the case may nevertheless be usurped even after the trial court has concluded that expert testimony is admissible by an appellate court's overly burdensome application of *Daubert*, as evidenced by the facts of this case.  Accordingly, I do not agree that *Daubert* is preferable to *Frye*.

### THIS CASE

In this case, after holding *Daubert* hearings on the plaintiff's experts' testimony, the trial court allowed the experts to testify regarding whether the products of three defendants, which contained asbestos, were a substantial contributing cause of the plaintiff's mesothelioma.  *Crane Co. v. DeLisle*, 206 So. 3d 94, 99 (Fla. 4th DCA 2016).  The jury asked numerous probative questions during the trial and deliberated for three days before rendering a verdict, in which

it apportioned fault against all three named defendants, in addition to a *Fabre*[10] defendant.  *Crane*, 206 So. 3d at 100.

Despite the jury's careful consideration of the case, the Fourth District Court of Appeal reversed for a new trial, concluding that the trial court abused its discretion in admitting three of the plaintiff's expert witnesses who testified regarding causation.  *Id.*; *see* majority op. at 20.  As the majority explains, the causation testimony in this case would not have even been subject to a *Frye* challenge because "medical causation testimony is not new or novel."  Majority op. at 20 (citing *Marsh v. Valyou*, 977 So. 2d 543, 549 (Fla. 2007)).  Similarly, as also noted by the majority, this Court has, for decades, understood that asbestos products "have widely divergent toxicities, with some asbestos products presenting a much greater risk of harm than others."  Majority op. at 20 (quoting *Celotex Corp. v. Copeland*, 471 So. 2d 533, 538 (Fla. 1985)).

In other words, before *Daubert*, the testimony of the plaintiffs' causation experts would not have been subject to challenge.  Under *Daubert*, however, an appellate court can usurp both the function of the trial court in ruling on the admissibility of evidence that is neither new nor novel, and the role of the jury in weighing the evidence and rendering a verdict.

---

10.  *Fabre v. Marin*, 623 So. 2d 1182 (Fla. 1993).

**CONCLUSION**

For the reasons stated, in addition to the majority's conclusion that the *Daubert* amendment unconstitutionally infringes on this Court's rulemaking authority, I would also conclude that the *Daubert* amendment has the potential to unconstitutionally impair litigants' right to access the courts in civil cases. The amendment does nothing to enhance the factfinding process, and instead, displays a gross mistrust of the jury system.

LABARGA, J., concurs.

LABARGA, J., concurring.

I fully concur with the majority opinion, but write separately to express why jurisdiction is proper in this case on the basis of express and direct conflict. In the decision below, the Fourth District Court of Appeal evaluated the admissibility of the experts' testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). However, as noted by the majority, this Court has repeatedly stated that *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), is the applicable standard for admissibility of expert testimony in Florida. For example, in *Marsh v. Valyou*, 977 So. 2d 543 (Fla. 2007), we explained:

> Despite the Supreme Court's decision in *Daubert*, we have since repeatedly reaffirmed our adherence to the *Frye* standard for admissibility of evidence. *See, e.g.*, *Ibar v. State*, 938 So. 2d 451, 467 (Fla. 2006) ("Florida courts do not follow *Daubert*, but instead follow the test set out in *Frye*."), *cert. denied*, 549 U.S. 1208, 127 S. Ct. 1326, 167 L. Ed. 2d 79 (2007); *Brim v. State*, 695 So. 2d 268, 271-72

- 33 -

(Fla. 1997) ("Despite the federal adoption of a more lenient standard in [*Daubert*], we have maintained the higher standard of reliability as dictated by *Frye*."); *Hadden v. State*, 690 So. 2d 573, 578 (Fla. 1997) ("Our specific adoption of that test after the enactment of the evidence code manifests our intent to use the *Frye* test as the proper standard for admitting novel scientific evidence in Florida, even though the *Frye* test is not set forth in the evidence code."); *Flanagan v. State*, 625 So. 2d 827, 829 n.2 (Fla. 1993) ("We are mindful that the United States Supreme Court recently construed Rule 702 of the Federal Rules of Evidence as superseding the *Frye* test. However, Florida continues to adhere to the *Frye* test for admissibility of scientific opinions.").

*Id.* at 547 (alteration in original).

Thus, the decision in *DeLisle*, which applied the *Daubert* standard, conflicts with earlier decisions by this Court that conclude *Frye* is the appropriate test. Although the Legislature amended the Evidence Code in 2013, this Court has never held that *Daubert* is the appropriate standard for admission of expert testimony in Florida. In fact, in 2017—after the issuance of *DeLisle*—we expressly declined to adopt the amendments to the Evidence Code implementing *Daubert* to the extent they were procedural due to "grave constitutional concerns." *In re Amendments to Fla. Evidence Code*, 210 So. 3d 1231, 1239 (Fla. 2017). Accordingly, despite the change in the Evidence Code, conflict between *DeLisle* and *Marsh*, *Ibar*, and other decisions articulating *Frye* as the applicable standard in Florida remains, and resolution as to which standard applies is critical to resolve uncertainty in Florida law. For this reason, we absolutely possess jurisdiction to address and determine whether the lower court properly applied *Daubert*.

PARIENTE, J., concurs.

CANADY, C.J., dissenting.

The majority grounds its exercise of jurisdiction on express and direct conflict, asserting that the decision on review, *Crane Co. v. DeLisle*, 206 So. 3d 94 (Fla. 4th DCA 2016)—which applies the *Daubert*[11] standard codified in revised section 90.702, Florida Statutes—is in conflict with *Marsh v. Valyou*, 977 So. 2d 543 (Fla. 2007), and other cases applying legal principles based on the *Frye*[12] standard. Under article V, section 3(b)(3) of the Florida Constitution, such jurisdiction exists only if the decision on review "expressly and directly conflicts with a decision of another district court of appeal or of the supreme court on the same question of law." Because *Marsh* and similar cases do not address "the same question of law" addressed in *DeLisle*, there is no express and direct conflict jurisdiction.

We have long recognized that a case decided on the basis of a statutory provision cannot be in conflict with an earlier case that pre-dated the effective date of that statutory provision. *See In re Interest of M.P.*, 472 So. 2d 732, 733 (Fla. 1985) (denying review on the ground that the asserted conflict case "arose prior to

11. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

12. *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).

- 35 -

the effective date" of the controlling statute in the case on review and therefore was "clearly distinguishable").  This follows from the self-evident proposition that one case decided on the basis of a statute and another case decided prior to the effective date of the statute on the basis of previous governing law do not—and could not—address "the same question of law."  The new statute changes the legal landscape and presents an entirely novel legal question—namely, what does the new statute provide?

*Marsh* and similar cases based on Florida's *Frye* jurisprudence do not address the "same question of law" as the question addressed in *DeLisle*, which was controlled by and applied amended section 90.702, a statute that became effective after *Marsh* and similar cases were decided and that was specifically designed to displace Florida's *Frye* jurisprudence.

To exercise jurisdiction here, the majority sets aside fundamental constitutional principles of conflict jurisdiction.  Never before have we exercised conflict jurisdiction on the ground that a case applies a statute that displaces previously existing law.  The majority thus charts an unprecedented and ill-advised course that would expand this Court's conflict jurisdiction to encompass every case in which a district court applies a statute that has changed a legal rule in any area of the law.  This is a very serious error.

The constitutionality of amended section 90.702 is unquestionably an important issue that is worthy of consideration by this Court. But the importance of an issue does not justify transgressing the constitutional bounds of this Court's jurisdiction. Instead, such an issue should be considered by this Court only in a case that presents a proper basis for jurisdiction under our constitution. Of course, this case might well have presented a basis for jurisdiction. If DeLisle had made an argument to the district court challenging the constitutionality of amended section 90.702, the district court most likely would have addressed that argument in its opinion. And then—depending on the district court's ruling—this Court would have had either mandatory jurisdiction based on a declaration of invalidity, art. V, § 3(b)(1), Fla. Const., or discretionary jurisdiction based on a declaration of validity, art. V, § 3(b)(3), Fla. Const. Yet for some reason, such an argument was not presented to the district court. Parties every day make choices in litigating cases that limit their options for review. And parties ordinarily must live with the choices they make. This Court should not rescue a party from a poor choice by exercising jurisdiction where none exists.

This case should be discharged. I dissent.

POLSTON and LAWSON, JJ., concur.

Application for Review of the Decision of the District Court of Appeal – Direct Conflict of Decisions

Fourth District - Case Nos. 4D13-4351 and 4D14-146

(Broward County)

James L. Ferraro, David A. Jagolinzer, and Paulo R. Lima of The Ferraro Law Firm, P.A., Miami, Florida,

    for Petitioner

Elliot H. Scherker, Julissa Rodriguez, Brigid F. Cech Samole, Sabrina F. Gallo, and Stephanie L. Varela of Greenberg Traurig, P.A., Miami, Florida,

    for Respondent R.J. Reynolds Tobacco Company, as successor-by merger
    to Lorillard Tobacco Company, and Hollingsworth & Vose Company

Paul F. Hancock and William J. Simonitsch of K & L Gates, LLP, Miami, Florida; and Richard E. Doran of Ausley McMullen, Tallahassee, Florida,

    for Respondent Crane Co.

Bryan S. Gowdy of Creed & Gowdy, P.A., Jacksonville, Florida; and Howard C. Coker of Coker, Schickel, Sorenson, Posgay, Camerlongo & Iracki, Jacksonville, Florida,

    for Amicus Curiae Counsel for Florida Justice Association

Kansas R. Gooden of Boyd & Jenerette, P.A., Jacksonville, Florida,

    for Amicus Curiae Florida Defense Lawyers Association

Wesley A. Bowden of Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A., Pensacola, Florida,

    for Amicus Curiae Concerned Physicians, Scientists and Scholars Regarding
    Causation of Asbestos-Related Disease

Cory L. Andrews of Washington Legal Foundation, Washington, District of Columbia,

    for Amicus Curiae Washington Legal Foundation

Martin S. Kaufman of Atlantic Legal Foundation, Harrison, New York; and Joseph H. Varner, III of Holland & Knight, LLP, Tampa, Florida,

>for Amici Curiae John Henderson Duffus, Ph.D., Ronald E. Gots, M.D., Dr. A. Alan Moghissi, Professor Robert Nolan, Gordon L. Nord, Ph.D., and Professor Emanuel Rubin

Andy Bardos and George N. Meros, Jr., of GrayRobinson, P.A., Tallahassee, Florida; and William W. Large of Florida Justice Reform Institute, Tallahassee, Florida,

>for Amicus Curiae Florida Justice Reform Institute

William N. Shepherd, Jason D. Lazarus, and Tiffany Roddenberry of Holland & Knight, LLP, West Palm Beach, Florida; and H. Eugene Lindsey III, Miami, Florida,

>for Amicus Curiae The National Association of Criminal Defense Lawyers

Pamela Jo Bondi, Attorney General, Amit Agarwal, Solicitor General, Edward M. Wenger, Chief Deputy Solicitor General, and Jordan E. Pratt, Deputy Solicitor General, Tallahassee, Florida,

>for Amicus Curiae State of Florida