790 So.2d 381 (2000)
Douglas M. JACKSON, Sr., Petitioner,
v.
FLORIDA DEPARTMENT OF CORRECTIONS, Respondent.
No. SC92827.
Supreme Court of Florida.
May 4, 2000.
Order Denying Rehearing January 18, 2001.
*382 Douglas M. Jackson, Sr., Starke, FL, pro se.
Louis A. Vargas, Donna M. La Plante, Assistant Attorney General, Tallahassee, FL, for Respondent.
PER CURIAM.
Petitioner's motion for rehearing is granted in part. The opinion issued in this case on November 18, 1999, is withdrawn, and the following opinion is substituted.
Douglas M. Jackson, Sr., petitions this Court for a writ of mandamus. We have jurisdiction. See art. V, § 3(b)(8), Fla. Const.

FACTS
Jackson is a prisoner currently serving a life sentence for multiple murders committed in 1981. On April 20, 1998, Jackson filed a petition for writ of mandamus against the Florida Department of Corrections ("the Department"). On April 23, 1998, this Court granted Jackson's motion for leave to proceed in forma pauperis. However, upon further review, it came to this Court's attention that Jackson had not complied with the requirements of section *383 57.085(7), Florida Statutes (1997)[1] (Prisoner Indigency Statute), which provides in full:
A prisoner who has twice in the preceding 3 years been adjudicated indigent under this section, certified indigent under s. 57.081, or authorized to proceed as an indigent under 28 U.S.C. s.1915 by a federal court may not be adjudicated indigent to pursue a new suit, action, claim, proceeding, or appeal without first obtaining leave of court. In a request for leave of court, the prisoner must provide a complete listing of each suit, action, claim, proceeding, or appeal brought by the prisoner or intervened in by the prisoner in any court or other adjudicatory forum in the preceding 5 years. The prisoner must attach to a request for leave of court a copy of each complaint, petition, or other document purporting to commence a lawsuit and a record of disposition of the proceeding.
Accordingly, on September 18, 1998, this Court vacated its earlier order granting Jackson's motion to proceed in forma pauperis and denied the motion. This Court instructed Jackson that the denial was without prejudice to his filing another motion for leave to proceed in forma pauperis which complied with the requirements of section 57.085(7).
In our opinion filed November 18, 1999, we found Jackson's subsequently filed motion insufficient as well, since it still did not comply with the requirements of the statute. In that opinion, while we applauded the Legislature's attempt to curtail the filing of frivolous inmate petitions, we also expressed our concern that strict enforcement of the copy requirement part of the statute might result in a long, drawn-out factual inquiry. Such an inquiry might be necessary, we noted, if an inmate were to allege inability to comply with the requirement because the inmate had been forced by prison officials to dispose of his or her copies of prior proceedings, especially if prison officials asserted that the inmate had not been forced to dispose of the documents. In our prior opinion we also went to great lengths to stress that enforcement of the copy requirement portion of the statute had imposed an "administrative nightmare" on this Court and the judicial system as a whole. We asked the Legislature to attempt to remedy this situation. No action has been forthcoming.
Jackson now asserts in his motion for rehearing that the prison forced him to do away with his copies of pleadings in all his prior proceedings, so he cannot comply with the copy requirement of the statute. The Department responds that it never forced Jackson to do away with his legal papers. In Jackson's reply he again asserts that his documents were destroyed and requests an evidentiary hearing. In other words, our original concern has come into fruitionwe are now faced with the unhappy possibility that we must now conduct some sort of fact-finding inquiry (or appoint a referee) to determine what documents have been destroyed and what documents have not been destroyed. Again, under the statute, all this must be done before this Court can even begin to examine the merits of the petition itself. This outcome clearly results in another administrative burden placed on this Court by the copy requirement part of the statute. Thus, we are now forced to withdraw our original opinion in this case.

ANALYSIS
In our original opinion in this case we reaffirmed the long-standing proposition that the existence of a right for *384 indigents to proceed without payment of costs is a substantive one and is properly provided for by the Legislature. See Amos v. Department of Health & Rehabilitative Servs., 416 So.2d 841 (Fla. 1st DCA 1982). We also noted that the right could be properly limited by the Legislature, including a requirement that inmates contribute toward the costs of their lawsuits and ultimately pay for the lawsuits in full if they subsequently become able to do so. See § 57.085(5), Fla.Stat. (1999).[2] We reaffirm that proposition today. See generally Kleinschmidt v. Estate of Kleinschmidt, 392 So.2d 66 (Fla. 3d DCA 1981); Lee v. City of Winter Haven, 386 So.2d 268 (Fla. 2d DCA 1980); Hillman v. Federal Nat'l Mortgage Ass'n, 375 So.2d 336, 337 (Fla. 4th DCA 1979). We again applaud the efforts of the Legislature in this regard and intend to fully enforce the substantive payment-related provisions of the Prisoner Indigency Statute.[3]
A statute can, however, have both substantive provisions and procedural requirements. If the procedural requirements conflict with or interfere with the procedural mechanisms of the court system, they are unconstitutional under both a separation of powers analysis, and because formulating procedures for granting in forma pauperis status is the exclusive province of the Supreme Court pursuant to the rulemaking authority vested in it by the Florida Constitution. See art. II, § 3, art. V, § 2, Fla. Const.; see also State v. Garcia, 229 So.2d 236, 238 (Fla.1969) (noting that procedural law has been described as the legal machinery by which substantive law is made effective); Z & O Realty Assocs., Inc. v. Lakow, 519 So.2d 3, 5 (Fla. 3d DCA 1987); State v. J.A., Jr., 367 So.2d 702, 703 (Fla. 2d DCA 1979) (stating that substantive law, the responsibility of the Legislature, prescribes duties and rights while procedural law, determined by the Supreme Court, concerns the means and methods to apply and enforce those duties and rights).
This Court has already promulgated a rule which regulates the procedure for seeking indigency status. The prerequisite imposed by the Prisoner Indigency Statute that inmates file copies of their prior actions in the court before the court may even consider making an indigency determination is an additional procedure imposed by the statute which does not appear in this Court's rule and conflicts with that rule.
Further, since prisoners attempting to comply with the copy requirement are not required to send copies to the State, we are assuming that the copy requirement subsection was included in the statute so that the courts could determine whether an inmate had previously filed a frivolous or successive petition. While we appreciate the effort the Legislature appears to have made in an attempt to lessen the judicial workload, the effort has had the opposite effect. The copy requirement has greatly increased the courts' workload because it sets forth new procedures for the granting of indigency status.
This Court's clerk's office has spent countless hours explaining the copy requirement *385 to inmates, receiving partial submissions and sending out additional letters informing inmates that they still have not submitted all of the required copies. The copy requirement has greatly increased this Court's workload as a whole as well. We have, on a number of occasions, been forced to request preliminary responses when inmates asserted that the Department of Corrections would not make the copies necessary for compliance with the statute. This is only one example of the many occasions in which this Court was called upon to spend its valuable time dealing with matters completely unrelated to the merits of the litigant's case.
The copy requirement must surely be a burden on the Department of Corrections as well since even assuming an inmate has not lost possession of one set of the copies of his or her prior legal actions, if the inmate has insufficient funds to pay to have the prison make additional copies for the court, the Department is still required to make the photocopies. See Fla.Admin.Code R. 33-602.405(4). Further, it is not uncommon for an inmate's prior pleadings to consist of several hundred or even thousands of pages. Clearly, this requirement must be a tremendous burden on the Department and, ultimately, on the taxpayer.
Moreover, while inmate pleadings are often difficult to read as they are usually handwritten, these pleadings are many times more difficult to read when they have been photocopied numerous times. A large number of the photocopies we routinely receive from inmates are absolutely useless because they are completely illegible. Even if we could read them, that would increase exponentially the amount of time it takes us to examine and rule upon each case. The longer the petition, the more time it takes to review and the more time it takes for this Court to render a decision. In other words, the copy requirement delays the administration of justice.
Finally, once a litigious inmate has actually complied with the statute by sending in his or her thousands of pages of prior pleadings, this Court's clerk must place it with the court file and, due to its tremendous size and weight, literally wheel the file up to each justice's office, where the stacks of pleadings must be reviewed. Ultimately, once the case is completed, the storage of these large files also poses problems.
If the copy requirement procedure were not so cumbersome and provided some benefit to this Court, we might merely accept the "suggested" procedure and amend our indigency rule to implement the copy requirement. See e.g. Kalway v. Singletary, 708 So.2d 267, 269 (Fla.1998) (noting that the Court on occasion has deferred to the expertise of the Legislature in implementing the Court's rules of procedure); see also Amendments to Fla. Rules of App. Pro., 696 So.2d 1103 (Fla.1996). Contrary to those cases, however, compliance with the copy requirement "procedure" by this Court has been extremely cumbersome and of little, if any, use at all.
This Court has already promulgated a rule which regulates the procedure and practice utilized by the courts in considering whether to grant an inmate's request to proceed in forma pauperis. See, e.g., Fla.R.App.P. 9.430. The statute adds new procedures to the ones already in the rule and they conflict with it. Thus, we conclude that this legislatively imposed "procedure" is interfering with and intruding upon the procedures and processes of this Court and conflicts with this Court's own rule regulating the procedure for indigency determinations (rule 9.430). Under such circumstances, this Court has the authority, perhaps even the duty, to declare *386 the copy requirement portion of the Prisoner Indigency Statute void and state that the judiciary will not comply with it or require that inmates comply with it. Accordingly, we find the copy requirement portion (only) of subsection (7) of section 57.085 to be unconstitutional as a violation of separation of powers and as a usurpation of our exclusive rulemaking authority. We will no longer require inmates to comply with this procedure and instruct the courts of this State to disregard that requirement. We suggest to the Legislature that it may wish to consider creating and funding a mechanism to provide the courts and the parties, perhaps via the Internet, with access to or information about the legal actions an inmate petitioner has filed in any of Florida's courts. This mechanism might provide the information the Legislature apparently intended the copy requirement to fulfill, that is, it might provide the courts (and the State) with a quick and easily accessible information source to see if certain litigants have filed similar or abusive actions before.
Having determined that Jackson need not provide copies of his prior actions, we have now decided that under rule 9.430, Jackson has satisfied his burden that he has no funds with which to pay the filing fee in this case. Accordingly, we grant Jackson's motion to proceed in forma pauperis and proceed to examine the merits of this case.
Upon consideration of the merits of Jackson's case, however, we must conclude that Jackson's arguments have no merit. In order to be entitled to a writ of mandamus the petitioner must have a clear legal right to the requested relief and the respondent must have an indisputable legal duty to perform the requested action. See Turner v. Singletary, 623 So.2d 537, 538 (Fla. 1st DCA 1993). Jackson asserts that he has a right to payment for the duties and tasks he performs in the prison and that the Department of Corrections has a duty to pay him and to promulgate rules to that effect pursuant to section 944.09(1)(m), Florida Statutes (1997). Nevertheless, the Department has already adopted a number of rules relating to inmate compensation under circumstances not applicable to Jackson's situation. See, e.g., Fla.Admin.Code R. 33-203.101(11); 33-203.201(2). Since the Department has promulgated rules in reference to this statute and Jackson has no right to require the promulgation of any particular rules, Jackson's assertions concerning the rule promulgation are without merit.
Jackson also argues that being forced to work without compensation violates the Thirteenth Amendment of the United States Constitution and that section 946.002(3), Florida Statutes (1997), mandates that he be compensated for his work.
Nonetheless, numerous cases, including cases cited by Jackson, hold that requiring incarcerated prisoners to work without pay does not violate the Thirteenth Amendment outlawing slavery,[4] the Eighth Amendment prohibiting cruel or unusual punishment, or the Equal Protection *387 Clause. See, e.g., Wendt v. Lynaugh, 841 F.2d 619 (5th Cir.1988); Borror v. White, 377 F.Supp. 181 (W.D.Va.1974); Rochon v. Blackburn, 727 So.2d 602 (La. Ct.App.1998). The only situation in which an entitlement to compensation might arise is where a state statute mandates payment to prisoners. See, e.g., Piatt v. MacDougall, 773 F.2d 1032 (9th Cir.1985) (plaintiff stated claim where Arizona statute created a right to compensation where inmate performed certain labor); Borror v. White, 377 F.Supp. 181 (W.D.Va.1974) (holding that there was no federal constitutional right to payment but if there were a state statute providing for compensation, inmate might be entitled to such compensation under the statute).
Section 946.002, Florida Statutes (1997),[5] does not mandate that prisoners be compensated. It provides that all able-bodied prisoners shall engage in daily labor. See § 946.002(1)(a), Fla.Stat. (1997). As pertinent to Jackson's assertion concerning compensation, subsection (2)(a) provides:
Each prisoner who is engaged in productive work in any state correctional institution, program, or facility ... may receive for work performed such compensation as the department shall determine. Such compensation shall be in accordance with a schedule based on quality and quantity of work performed and skill required for performance, and said compensation shall be credited to the account of the prisoner or the prisoner's family.
§ 946.002(2)(a), Fla.Stat. (1997) (emphasis added).
Subsection (3) provides in pertinent part: "Said compensation shall be paid from the Department of Corrections Correctional Work Program Trust Fund." None of these statutes mandate payment for inmate work.
Therefore, since neither the cases nor the statutes Jackson cites support his proposition that prisons must pay inmates for their work, Jackson's petition is so clearly without merit that we deem the petition to be frivolous and deny it.
This Court has recognized that "[t]he resources of our court system are finite and must be reserved for the resolution of genuine disputes." Rivera v. State, 728 So.2d 1165, 1166 (Fla.1998). The United States Supreme Court itself has restrained indigent petitioners who have abused the system in order to allocate the resources of the Court "in a way that promotes the interests of justice." In re McDonald, 489 U.S. 180, 184, 109 S.Ct. 993, 103 L.Ed.2d 158 (1989). In a decision addressing adequate prison law libraries, the Court held that the constitutional right of access to courts does not "guarantee inmates the wherewithal to transform themselves into litigating engines." Lewis v. Casey, 518 U.S. 343, 355, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (emphasis added). Jackson's lawsuits against the Department of Corrections have become so numerous that one could describe him similarly.[6] We agree with the Supreme *388 Court's assertion that "paupers filing pro se petitions are not subject to the financial considerations ... that deter other litigants from filing frivolous petitions" and that "[e]very paper filed with the Clerk of this Court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources." In re Mc-Donald, 489 U.S. at 184, 109 S.Ct. 993. Therefore, we find that we must restrain Jackson's ability to monopolize this Court's resources.
Accordingly, we hereby order Jackson to show cause why he should not be barred from filing pro se pleadings in this Court and why this Court should not refuse to accept for filing any actions he files without representation by counsel. Jackson shall serve his response to the order to show cause on or before May 19, 2000. The Respondent may file a reply to Jackson's response on or before May 29, 2000.
A motion for rehearing concerning this substituted opinion may be filed on or before May 19, 2000. A reply to any motion for rehearing filed by either party may be filed within ten days of service of the motion. The filing of a motion for rehearing shall not affect the due date for the response to the order to show cause or any reply thereto.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, ANSTEAD, PARIENTE, and LEWIS, JJ., concur.

ORDER
Petitioner's motion for rehearing is denied in light of the revised opinion. No further motions for rehearing will be allowed. The Court's decision concerning the order to show case issued to Petitioner *389 Jackson will be addressed in a subsequent opinion.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, PARIENTE and LEWIS, JJ., concur.
NOTES
[1] There has been no change made to the 1999 version of this statute.
[2] The statute also provides for circumstances under which a court may determine that an inmate is only partially indigent. In such circumstances, the court may require the inmate to pay a reduced payment at the time of filing and then make periodic payments toward the full payment of the filing fee. See § 57.085(4), Fla. Stat. (1999).
[3] We hereby ask The Florida Bar Appellate Court Rules Committee to propose amendments to rule 9.430 to comply with the substantive payment portions of the statute and that it suggest procedures (to be placed in the rule) for implementation of the statute.
[4] Incidentally, while Florida's constitution does not specifically outlaw slavery, the Thirteenth Amendment to the Constitution of the United States contains a specific prohibition against slavery. Interestingly enough, however, convicted felons are exempted from the general prohibition contained in the Constitution. The Thirteenth Amendment provides, in pertinent part:

Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.
U.S. Const. amend. XIII, § 1 (emphasis added).
[5] The 1999 version of this section has not been changed.
[6] This Court has not been specifically advised of Jackson's pleadings in other courts. However, based on an examination of this Court's records, from 1992 when this Court reversed Jackson's death sentence, see Jackson v. State, 599 So.2d 103 (Fla.1992)(No. 79,970), to just prior to filing the instant petition, he has filed or taken part in thirteen petitions in this Court. See Coleman [and Jackson] v. Florida Dep't of Corrections, 717 So.2d 529 (Fla. 1998)(No. 92,828); Jackson v. Florida Dep't of Corrections, 718 So.2d 168 (Fla.1998)(No. 92,793); Jackson v. Department of Corrections, 717 So.2d 533 (Fla.1998)(No. 92,121); Coleman v. Florida Dep't of Corrections, 717 So.2d 529 (Fla.1998)(No. 92,116); Jackson v. Department of Corrections, 717 So.2d 533 (Fla. 1998)(No. 92,114); Jackson v. Davis, 705 So.2d 9 (Fla.1997)(No. 91,796); Jackson v. Department of Corrections, 707 So.2d 1125 (Fla.1997)(No. 91,381); Vega [and Jackson] v. Singletary, 704 So.2d 521 (Fla.1997)(No. 90,021); Jackson v. McAndrew, 687 So.2d 1303 (Fla.1997)(No. 89,675); Jackson v. Schapiro, 680 So.2d 422 (Fla.1996)(No. 88,860); Jackson v. Singletary, 675 So.2d 927 (Fla. 1996)(No. 87,961); Jackson v. Singletary, 670 So.2d 938 (Fla.1996)(No. 87,372); Jackson v. Department of Corrections, 617 So.2d 319 (Fla.1993)(No. 81,061). Seven of those petitions were for writ of mandamus filed against the Department of Corrections or employees of the prison.

As a general rule, Jackson's petitions against the Department concern the manner in which it conducts prison affairs and how it disciplines its inmates. In each of the petitions listed above, Jackson was granted in forma pauperis status and thus was not required to pay the filing fee. Jackson paid no filing fee in his two petitions for review filed in this Court, and he paid no filing fee for the four habeas petitions filed here since there is no filing fee for such petitions.
Since the filing of the instant petition against the Department on April 20, 1998, Jackson has filed eleven additional petitions against the Department which are either still pending, were transferred, or were dismissed. See Jackson v. Department of Corrections, No. 93,227 (Fla. petition filed May 6, 1998)(pending); Jackson v. Singletary, No. 94,196 (Fla. petition filed Oct. 26, 1998)(pending); Jackson v. Department of Corrections, No. 94,195 (Fla. petition filed Oct. 26, 1998)(pending); Jackson v. Department of Corrections, No. 94,234 (Fla. petition filed Nov. 3, 1998)(pending); Jackson v. Department of Corrections, No. 94,271 (Fla. petition filed Nov. 9, 1998)(pending); Jackson v. Moore, No. 95,700 (Fla. petition filed June 1, 1999)(pending); Jackson v. Moore, No. 95,891 (Fla. Jul. 19, 1999)(transferred); Jackson v. Moore, No. 95,931 (Fla. Jul. 19, 1999)(transferred); Stridison [and Jackson] v. Moore, No. 95,992 (Fla. Jul. 23, 1999)(transferred); Jackson v. Moore, No. 96,321 (Fla. petition filed Aug. 19, 1999)(pending); Stridison [and Jackson] v. Moore, 741 So.2d 1137 (Fla.1999)(dismissed). In all likelihood, Jackson will have filed more petitions in this Court before this decision is published.