QUINCE, J.
*1221 Richard DeLisle seeks review of the decision of the Fourth District Court of Appeal in Crane Co. v. DeLisle , 206 So.3d 94 (Fla. 4th DCA 2016), on the ground that it expressly and directly conflicts with a decision of this Court on a question of law.[1] We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.
The facts of this case were described in the Fourth District's opinion as follows:
After developing mesothelioma, DeLisle filed a personal injury action against sixteen defendants, claiming that each *1222 caused him to be exposed to asbestos. He alleged negligence and strict liability under failure-to-warn and design-defect theories. Of these defendants, DeLisle proceeded to trial only against Crane, Lorillard Tobacco Co., and Hollingsworth & Vose Co. ("H & V").
At trial, DeLisle presented evidence that he was exposed to asbestos fibers from sheet gaskets while working at Brightwater Paper Co. between 1962 and 1966. Crane, a valve and pump manufacturer, used "Cranite" sheet gaskets containing chrysotile asbestos fibers. DeLisle also testified that he smoked Original Kent cigarettes with asbestos-containing "Micronite" filters from 1952 to 1956. These cigarettes were produced by Lorillard's predecessor, and the filters were supplied by a former subsidiary of H & V. The filters contained crocidolite asbestos. In addition to Cranite gaskets and Kent cigarettes, DeLisle testified that he was exposed to asbestos-containing products from the following nonparty defendants: Garlock Sealing Technologies, LLC; A.W. Chesterton Co.; Ford Motor Co.; Honeywell International, Inc., f/k/a Allied Signal, as successor in interest to Allied Corp., as successor in interest to The Bendix Corp.; Georgia-Pacific LLC, f/k/a Georgia-Pacific Corp.; Goulds Pumps, Inc.; Union Carbide Corp.; Brightwater; and Owens-Corning Fiberglass.
Lorillard contested DeLisle's use of Kent cigarettes. DeLisle testified that he smoked on average a pack of Kent cigarettes a day from junior high school until he enlisted in the army in 1957. Two of his high school friends, however, did not recall him smoking, and his former wife testified that by the late 1960's, DeLisle was only smoking unfiltered cigarettes.
The parties hotly disputed causation, and even DeLisle's own experts did not agree on which products produced sufficient exposure to asbestos to constitute a substantial contributing factor to DeLisle's disease. Although all of DeLisle's experts agreed that the crocidolite asbestos in the Kent filters was a causative factor, they disagreed as to whether the other products were substantial contributing factors.
Appellees challenged each expert's opinions under section 90.702, Florida Statutes, which adopted the Daubert test for expert testimony. DeLisle introduced the causation expert opinions of Drs. James Dahlgren, James Millette, James Crapo, and James Rasmuson. Lorillard and H & V unsuccessfully moved to exclude their testimony, as well as any testimony regarding experiments conducted by Dr. William Longo. Dr. Dahlgren is a toxicologist who testified as to causation. Dr. Millette is an environmental scientist who tested asbestos-containing products for fiber release. Dr. Crapo, a pulmonologist, reviewed studies by both Dr. Longo and Dr. Millette to determine that Kent cigarettes would be a substantial contributing factor to mesothelioma. Dr. Rasmuson, an industrial hygienist, relied on Dr. Longo's testing to opine on DeLisle's exposure. Following Daubert hearings, the trial court admitted each expert's testimony.
Before the jury, Dr. Dahlgren opined that "every exposure" above background levels to friable, inhaled asbestos-regardless of product, fiber type, and dose-would be considered a substantial contributing factor to DeLisle's mesothelioma. In contrast, Dr. Rasmuson testified that low-level exposures to chrysotile asbestos would not increase the risk of mesothelioma. Dr. Crapo testified similarly to Dr. Rasmuson as to low-level chrysotile asbestos.
Crane, Lorillard, H & V, and DeLisle all moved for directed verdicts, and DeLisle *1223 sought to exclude any Fabre defendants from the verdict form. The court denied the motions for directed verdict and determined that Brightwater, DeLisle's former employer, and Owens-Corning, which manufactured asbestos-containing products that DeLisle had worked with at Brightwater, should be included on the verdict form. The court excluded the remaining nonparty defendants as Fabre defendants.
During the jury charge conference, Lorillard and H & V asked the trial court to instruct the jury on the threshold issue of whether DeLisle ever smoked Kent cigarettes. DeLisle opposed the instruction. The court denied the proposed instruction, reasoning that the issue was "subsumed in the [standard] instruction."
Following three days of deliberation, the jury awarded DeLisle $8 million in damages and apportioned fault as follows:
• Crane: 16%
• Lorillard: 22%
• H & V: 22%
• Brightwater: 20%
• Owens-Corning: 20%
After trial, Crane, Lorillard, and H & V variously moved for a judgment notwithstanding the verdict, judgment in accordance with their motions for directed verdict, a new trial, or, in the alternative, for a remittitur. The trial court denied the motions. The court then entered a final judgment awarding DeLisle $8 million in past and future non-economic compensatory damages, apportioned to Crane, Lorillard, and H & V based on the jury's distribution of fault.
Crane Co. v. DeLisle , 206 So.3d 94, 98-100 (Fla. 4th DCA 2016) (footnotes omitted). Crane appealed the trial court's denial of its motions for directed verdict and judgment notwithstanding the verdict and the trial court's admission of expert causation testimony among other issues. Id. at 100. R.J. Reynolds also appealed the admission of expert testimony and both parties appealed the award as excessive. Id.
The Fourth District reviewed the admission of the testimony of the experts under Daubert v. Merrell Dow Pharmaceuticals, Inc. , 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and found that the trial court "failed to properly exercise its gatekeeping function as to Drs. Dahlgren, Crapo, and Rasmuson." Id. The Fourth District reversed for a new trial for R. J. Reynolds and reversed and remanded for entry of a directed verdict for Crane. Id. at 111-12. DeLisle sought review by this Court, which was granted.
The Florida Legislature and the Florida Supreme Court have worked in tandem for nearly forty years to enact and maintain codified rules of evidence. This arrangement between the branches to avoid constitutional questions of separation of powers continued uninterrupted from the Evidence Code's inception until 2000. In the instant case, we are asked to determine whether chapter 2013-107, section 1, Laws of Florida, which revised section 90.702, Florida Statutes (2015), and which we previously declined to adopt, to the extent it was procedural, infringes on this Court's rulemaking authority. We find that it does. Therefore, we reverse the Fourth District and remand for reinstatement of the final judgment.
The Florida Legislature enacted the first codified rules of evidence in 1976. Ch. 76-237, at 556, Laws of Florida. In 1979, we adopted the Florida Evidence Code, to the extent that the code was procedural. See In re Fla. Evidence Code , 372 So.2d 1369 (Fla.), clarified , In re Fla. Evidence Code , 376 So.2d 1161 (Fla. 1979). We recognized that "[r]ules of evidence may in some instances be substantive law and, therefore, the sole responsibility of the *1224 legislature. In other instances, evidentiary rules may be procedural and the responsibility of this Court." Id. at 1369. We therefore chose to adopt the rules, "[t]o avoid multiple appeals and confusion in the operation of the courts caused by assertions that portions of the evidence code are procedural and, therefore, unconstitutional because they had not been adopted by this Court under its rule-making authority." Id. Since then, we have traditionally continued to adopt the code, to the extent it is procedural, to avoid the issue of whether the Evidence Code is substantive in nature and therefore within the province of the Legislature or procedural in nature and therefore within the province of this Court. See, e.g. , In re Amends. to the Fla. Evidence Code , 53 So.3d 1019 (Fla. 2011) ; In re Amends. to the Fla. Evidence Code , 960 So.2d 762 (Fla. 2007) ; In re Amends. to the Fla. Evidence Code-Section 90.104 , 914 So.2d 940 (Fla. 2005) ; Amends. to the Fla. Evidence Code , 891 So.2d 1037 (Fla. 2004) ; In re Amends. to Fla. Evidence Code , 825 So.2d 339 (Fla. 2002) ; In re Fla. Evidence Code , 675 So.2d 584 (Fla. 1996) ; In re Fla. Evidence Code , 638 So.2d 920 (Fla. 1993) ; In re Amend. of Fla. Evidence Code , 497 So.2d 239 (Fla. 1986) ; In re Amend. of Fla. Evidence Code , 404 So.2d 743 (Fla. 1981).
Until 2000, the working arrangement between the Legislature and the Florida Supreme Court remained intact. However, in In re Amendments to the Florida Evidence Code , 782 So.2d 339 (Fla. 2000), this Court for the first time declined to adopt, to the extent they were procedural, amendments to section 90.803, Florida Statutes (1997). Id. (declining to adopt chapter 98-2, section 1, Laws of Florida, amending section 90.803(22), Florida Statutes, which allows the admission of former testimony although the declarant is available as a witness, in part because of concerns about its constitutionality). We then considered the constitutionality of the provision in State v. Abreu , 837 So.2d 400 (Fla. 2003), determining that the revised statute was unconstitutional because it infringed on a defendant's right to confront witnesses. Id. at 406.
Since then, we have only rarely declined to adopt a statutory revision to the Evidence Code. See, e.g., In re Amends. to the Fla. Evidence Code , 210 So.3d 1231 (Fla. 2017) (declining to adopt chapter 2013-107, sections 1-2, Laws of Florida); In re Amends. to the Fla. Evidence Code , 144 So.3d 536 (Fla. 2014) (declining to adopt chapter 2011-183, section 1, Laws of Florida, creating section 90.5021, Florida Statutes (2012), which establishes a "fiduciary lawyer-client privilege," and declining to adopt chapter 2011-233, section 10, Laws of Florida, creating section 766.102(12), Florida Statutes (2012), which pertains to a medical malpractice expert witness provision). Since its inception, therefore, the Florida Evidence Code has been considered neither purely substantive nor purely procedural. See In re Fla. Evidence Code , 372 So.2d 1369, 1369 (Fla.), clarified, 376 So.2d 1161 (Fla. 1979) ("Rules of evidence may in some instances be substantive law and, therefore, the sole responsibility of the legislature. In other instances, evidentiary rules may be procedural and the responsibility of this Court.").
Generally, the Legislature has the power to enact substantive law while this Court has the power to enact procedural law. See Allen v. Butterworth , 756 So.2d 52, 59 (Fla. 2000). Substantive law has been described as that which defines, creates, or regulates rights-"those existing for their own sake and constituting the normal legal order of society, i.e., the rights of life, liberty, property, and reputation." In re Fla. Rules of Criminal Procedure , 272 So.2d 65, 65 (Fla. 1972) (Adkins, J., concurring). Procedural law, on the other hand, is the form, manner, or means by which substantive law is implemented.
*1225 Id. at 66 (Adkins, J., concurring). Stated differently, procedural law "includes all rules governing the parties, their counsel and the Court throughout the progress of the case from the time of its initiation until final judgment and its execution." Allen v. Butterworth , 756 So.2d 52, 60 (Fla. 2000) (quoting In re Rules of Criminal Procedure , 272 So.2d at 66 (Adkins, J., concurring) ). "It is the method of conducting litigation involving rights and corresponding defenses." Haven Federal Savings & Loan Ass'n v. Kirian , 579 So.2d 730, 732 (Fla. 1991) (citing Skinner v. City of Eustis , 147 Fla. 22, 2 So.2d 116 (1941) ).
The distinction between substantive and procedural law, however, is not always clear. For example, a law is considered to be substantive when it both creates and conditions a right. See State v. Raymond , 906 So.2d 1045, 1049 (Fla. 2005) ; Jackson v. Fla. Dep't of Corr. , 790 So.2d 381, 383-84 (Fla. 2000) (holding that the Legislature could properly limit the right of indigents to proceed without payment of costs); Caple v. Tuttle's Design-Build, Inc. , 753 So.2d 49, 54 (Fla. 2000) (holding that a statute creating the right to petition for mortgage payment receipts during foreclosure proceedings and establishing the grounds for granting such a petition was constitutional); School Bd. of Broward Cty. v. Price , 362 So.2d 1337 (Fla. 1978) (holding that section 230.23(9)(d)(2), Florida Statutes (1977), set the bounds of a substantive right conditioned on a waiver and was therefore not an unconstitutional infringement of the Court's power to set procedural rules). However, when procedural aspects overwhelm substantive ones, the law may no longer be considered substantive. Raymond , 906 So.2d at 1049.
Here, the Legislature sought to adopt Daubert and cease the application of Frye to expert testimony. In Frye v. United States , 293 F. 1013 (D.C. Cir. 1923), a short opinion, the Court of Appeals for the District of Columbia pronounced that the line between when a scientific discovery or principle crosses from experimental to demonstrable is indiscernible so that courts would do better "admitting expert testimony deduced from a well-recognized scientific principle or discovery." Id. at 1014. Further, the Court explained, "the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs." Id. This rule-that expert testimony should be deduced from generally accepted scientific principles-has been the standard in Florida cases and, today, we reaffirm that it is still the standard. See, e.g., Kaminski v. State , 63 So.2d 339, 340 (Fla. 1952) (recognizing Frye 's rejection of systolic blood pressure deception tests as having "not yet gained such standing and scientific recognition among physiological and psychological authorities as would justify the courts in admitting expert testimony deduced from the discovery, development, and experiments thus far made.") (quoting Frye , 293 F. at 1014 ); Bundy v. State , 471 So.2d 9, 13 (Fla. 1985) (describing the Frye test as one in which "the results of mechanical or scientific testing are not admissible unless the testing has developed or improved to the point where experts in the field widely share the view that the results are scientifically reliable as accurate").
Considering the admissibility of posthypnotic testimony, we formally adopted Frye , determining:
[T]he test espoused in Frye properly addresses the issue of the admissibility of posthypnotic testimony. We acknowledge that the Frye rule has come under some criticism since its inception in 1923 as too harsh and inflexible; however, we believe that the problems associated with the other recognized judicial approaches foreclose their use.
*1226 Stokes v. State , 548 So.2d 188, 195 (Fla. 1989) (citation omitted) (citing Bundy v. State , 471 So.2d 9 (Fla. 1985) ; Bundy v. State , 455 So.2d 330 (Fla. 1984) ). Further, we noted:
[A] courtroom is not a laboratory, and as such it is not the place to conduct scientific experiments. If the scientific community considers a procedure or process unreliable for its own purposes, then the procedure must be considered less reliable for courtroom use.
Stokes , 548 So.2d at 193-94. We note that we adopted the Frye test irrespective of the Evidence Code, which was in place at the time.
In Hadden v. State , 690 So.2d 573 (Fla. 1997), we rejected the argument that the Legislature's enactment and this Court's subsequent adoption of the Evidence Code replaced the Frye standard with the balancing test that existed in the code. Hadden , 690 So.2d at 577 (citing Daubert , 509 U.S. 579, 113 S.Ct. 2786 ; Stokes , 548 So.2d 188 ). We stated:
The reasons for our adherence to the Frye test announced in Stokes continue today. Moreover, we firmly hold to the principle that it is the function of the court to not permit cases to be resolved on the basis of evidence for which a predicate of reliability has not been established. Reliability is fundamental to issues involved in the admissibility of evidence. It is this fundamental concept which similarly forms the rules dealing with the admissibility of hearsay evidence. As a rule, hearsay evidence is considered not sufficiently reliable to be admissible, and its admission is predicated on a showing of reliability by reason of something other than the hearsay itself. See § 90.802, Fla. Stat. (1995) ("Except as provided by statute, hearsay evidence is inadmissible."). This same premise underlies why novel scientific evidence is to be Frye tested. Novel scientific evidence must also be shown to be reliable on some basis other than simply that it is the opinion of the witness who seeks to offer the opinion. In sum, we will not permit factual issues to be resolved on the basis of opinions which have yet to achieve general acceptance in the relevant scientific community; to do otherwise would permit resolutions based upon evidence which has not been demonstrated to be sufficiently reliable and would thereby cast doubt on the reliability of the factual resolutions.
Hadden , 690 So.2d at 578.
After decades of the federal courts' applying Frye , Congress revised the Federal Rules of Evidence. The revision was addressed by the United States Supreme Court in 1993. In Daubert v. Merrell Dow Pharmaceuticals , 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the United States Supreme Court determined the appropriate standard for admitting expert scientific testimony in a federal trial. Id. at 582, 113 S.Ct. 2786. The Supreme Court ultimately agreed with the petitioners that Frye had been superseded by the adoption of the revised Federal Rules of Evidence. Id. at 587, 113 S.Ct. 2786.
The Court explained its decision, stating, "[I]n order to qualify as 'scientific knowledge,' an inference or assertion must be derived by the scientific method." Daubert , 509 U.S. at 590, 113 S.Ct. 2786. The inquiry derived from Daubert is a flexible one, as emphasized by the Supreme Court. Id. at 594, 113 S.Ct. 2786. "The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." Id. at 595, 113 S.Ct. 2786. The Supreme Court in Daubert opined that the change in rule 702 was necessary to permit scientifically valid and relevant evidence, summarizing:
"General acceptance" is not a necessary precondition to the admissibility of scientific evidence under the Federal Rules *1227 of Evidence, but the Rules of Evidence-especially Rule 702-do assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. Pertinent evidence based on scientifically valid principles will satisfy those demands.
Id. at 597, 113 S.Ct. 2786. In short, in Daubert , the United States Supreme Court found that otherwise probative and scientifically valid evidence was being excluded under the Frye standard and the change in rule 702 was necessary to permit additional relevant evidence to be considered even if it was based on scientific methods or principles that were not yet generally accepted.
Nevertheless, in Brim v. State , 695 So.2d 268 (Fla. 1997), we unanimously emphasized that we continue to apply Frye to "guarantee the reliability of new or novel scientific evidence." Id. at 271 (citing Stokes v. State , 548 So.2d 188 (Fla. 1989) ). We opined:
Despite the federal adoption of a more lenient standard in Daubert v. Merrell Dow Pharmaceuticals, Inc. , 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), we have maintained the higher standard of reliability as dictated by Frye . E.g., Ramirez v. State , 651 So.2d 1164 (Fla. 1995). This standard requires a determination, by the judge, that the basic underlying principles of scientific evidence have been sufficiently tested and accepted by the relevant scientific community. To that end, we have expressly held that the trial judge must treat new or novel scientific evidence as a matter of admissibility (for the judge) rather than a matter of weight (for the jury).
Brim , 695 So.2d at 271-72 (footnote omitted).
Following our repeated affirmations of the Frye rule, in 2013 the Legislature amended section 90.702 to incorporate Daubert in the Florida Rules of Evidence. The amendment revised the statute to read as follows:
90.702 Testimony by experts.-If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion or otherwise, if:
(1) The testimony is based upon sufficient facts or data;
(2) The testimony is the product of reliable principles and methods; and
(3) The witness has applied the principles and methods reliably to the facts of the case.
§ 90.702, Fla. Stat. (as amended by ch. 2013-107, § 1, Laws of Fla.).
Article II, section 3 of the Florida Constitution prohibits one branch of government from exercising any of the powers of the other branches. Further, article V, section 2(a) provides this Court the exclusive authority to "adopt rules for the practice and procedure in all courts." Art. V, § 2(a), Fla. Const. The Legislature may only repeal the rules of this Court by "general law enacted by two-thirds vote of the membership of each house of the legislature." Id. First, the amendment was not written to repeal Frye or Marsh but to overrule this Court's decision. See Fla. HB 7015, preamble (2013) (available at www.flsenate.gov/Session/Bill/2013/7015) ("the Florida Legislature intends to prohibit in the courts of this state pure opinion testimony as provided in Marsh ...". The vote here did not meet the requirement. The House passed the bill with a majority, 70 to 41 (or 58.3% of the membership). The Senate passed the bill with more than the necessary two-thirds vote, 30 to 9 (or 75% of the membership). Id.
*1228 We have previously found that the Legislature exceeded its authority in adopting statutes we found to infringe on the authority of this Court to determine matters of practice or procedure. For example, in Massey v. David , 979 So.2d 931 (Fla. 2008), we considered the constitutionality of section 57.071(2), Florida Statutes (1999), finding that the section was purely procedural because the substantive right it purported to create existed in a different section of the statutes. Id. at 935-36. We determined that "because section 57.071(2) only delineates the steps that a party must fulfill (i.e., the proverbial hoops through which a party must jump) to be entitled to an award of expert witness fees as costs, the statute is unquestionably a procedural one which conveys no substantive right at all." Id. at 940 (citing Raymond , 906 So.2d at 1049 ). Likewise, we found the time requirements established by the Legislature in section 44.102, Florida Statutes (1993), to be unconstitutional, finding that the section "sets forth only procedural requirements, [and therefore] intrudes upon the rule-making authority of the Supreme Court." Knealing v. Puleo , 675 So.2d 593, 596 (Fla. 1996) (citing art. V, § 2(a), Fla. Const.).
In Jackson v. Florida Department of Corrections , 790 So.2d 381 (Fla. 2000), we explained that a statute can have both substantive provisions and procedural requirements and "[i]f the procedural requirements conflict with or interfere with the procedural mechanisms of the court system, they are unconstitutional under both a separation of powers analysis, and because [they intrude upon] the exclusive province of the Supreme Court pursuant to the rulemaking authority vested in it by the Florida Constitution." Id. at 384 (citing art. II, § 3, art. V, § 2, Fla. Const.; State v. Garcia , 229 So.2d 236, 238 (Fla. 1969) ). We noted that the copy requirement contained in the rule provided an extra and unnecessary burden on the operation of this Court. Id. at 386.
In State v. Raymond , 906 So.2d 1045 (Fla. 2005), we determined that section 907.041(4)(b), Florida Statutes (2000), providing that a person charged with a dangerous crime was prohibited from receiving a nonmonetary pretrial release, was purely procedural and, therefore, an unconstitutional violation of the separation of powers clause. "It is a well-established principle that a statute which purports to create or modify a procedural rule of court is constitutionally infirm." Id. at 1048 (citing Markert v. Johnston , 367 So.2d 1003 (Fla. 1978) ). Further, "where there is no substantive right conveyed by the statute, the procedural aspects are not incidental; accordingly, such a statute is unconstitutional." Id. at 1049 (citing Knealing , 675 So.2d 593 ).
Further, we determined that the Legislature's attempt to "specif[y] the precise moment during the judicial proceeding when a motor vehicle liability insurer may be formally recognized as the real party in interest" in section 627.7262, Florida Statutes (1977), was "an invasion of this Court's rulemaking authority." Markert , 367 So.2d at 1005-06. However, in VanBibber v. Hartford Accident & Indemnity Insurance Co. , 439 So.2d 880 (Fla. 1983), we considered the revised version of the same statute, and determined that there were "substantial differences between the two statutes." Id. at 882. Because of those differences, we determined that the Legislature substantively pronounced public policy overturning this Court's pronouncement in Shingleton v. Bussey , 223 So.2d 713 (Fla. 1969), and was therefore constitutional. VanBibber , 439 So.2d at 883.[2]
*1229 Section 90.702, Florida Statutes, as amended in 2013, is not substantive. It does not create, define, or regulate a right. Indeed, while we have stated that the Florida Evidence Code contains both substantive and procedural rights, this statute is one that solely regulates the action of litigants in court proceedings. See, e.g. , Glendening v. State , 536 So.2d 212, 215 (Fla. 1988) (determining that section 90.803(23), Florida Statutes (1985), concerning out-of-court statements, was procedural for the purposes of ex post facto analysis).
Our consideration of the constitutionality of the amendment does not end with our determination that the provision was procedural. For this Court to determine that the amendment is unconstitutional, it must also conflict with a rule of this Court. See Haven Fed. Sav. & Loan Ass'n v. Kirian , 579 So.2d 730, 732-33 (Fla. 1991) ("Where this Court promulgates rules relating to the practice and procedure of all courts and a statute provides a contrary practice or procedure, the statute is unconstitutional to the extent of the conflict.") (citing Sch. Bd. v. Surette, 281 So.2d 481 (Fla. 1973), receded from on other grounds by Sch. Bd. v. Price, 362 So.2d 1337 (Fla. 1978) ); see also Leapai v. Milton , 595 So.2d 12, 14 (Fla. 1992) (holding that section 45.061, Florida Statutes (1987), was not unconstitutional to the extent it did not conflict with Florida Rule of Civil Procedure 1.442 and stating that "statutes should be construed to effectuate the express legislative intent and all doubt as to the validity of any statute should be resolved in favor of its constitutionality" (quoting McKibben v. Mallory , 293 So.2d 48 (Fla. 1974) ) ). A procedural rule of this Court may be pronounced in caselaw. See Sch. Bd. of Broward Cty. v. Surette , 281 So.2d 481, 483 (Fla. 1973), receded from on other grounds by Sch. Bd. of Broward Cty. v. Price , 362 So.2d 1337 (Fla. 1978) ("Where rules and construing opinions have been promulgated by this Court relating to the practice and procedure of all courts and a statutory provision provides a contrary practice or procedure ... the statute must fall.") While the Legislature purports to have pronounced public policy in overturning Marsh , we hold that the rule announced in Stokes and reaffirmed in Marsh was a procedural rule of this Court that the Legislature could not repeal by simple majority.
We recognize that Frye and Daubert are competing methods for a trial judge to determine the reliability of expert testimony before allowing it to be admitted into evidence. Both purport to provide a trial judge with the tools necessary to ensure that only reliable evidence is presented to the jury. Frye relies on the scientific community to determine reliability whereas Daubert relies on the scientific savvy of trial judges to determine the significance of the methodology used. With our decision today, we reaffirm that Frye , not Daubert , is the appropriate test in Florida courts.[3]
*1230 We have previously recognized that Frye is inapplicable to the vast majority of cases because it applies only when experts render an opinion that is based upon new or novel scientific techniques. Marsh , 977 So.2d at 547 (citing U.S. Sugar Corp. v. Henson , 823 So.2d 104, 109 (Fla. 2002). Further, we have stated that "a trial court 'has broad discretion in determining the range of the subjects on which an expert can testify, and the trial judge's ruling will be upheld absent a clear error.' " Davis v. State , 142 So.3d 867, 872 (Fla. 2014) (quoting Penalver v. State , 926 So.2d 1118, 1134 (Fla. 2006) ); see Hadden v. State , 690 So.2d 573, 581 (Fla. 1997) (stating that evidence found to be inadmissible under Frye does not necessarily require reversal because the error may be harmless) (citing Flanagan v. State , 625 So.2d 827, 829-30 (Fla. 1993) ).
The expert testimony in this case was properly admitted and should not have been excluded by the Fourth District. As we stated in Marsh , medical causation testimony is not new or novel and is not subject to Frye analysis. Marsh , 977 So.2d at 549. Further, we have previously recognized that asbestos products "have widely divergent toxicities, with some asbestos products presenting a much greater risk of harm than others." Celotex Corp. v. Copeland , 471 So.2d 533, 538 (Fla. 1985). Here, the trial court heeded our caution to "resist the temptation to usurp the jury's role in evaluating the credibility of experts and choosing between legitimate but conflicting scientific views." Marsh , 977 So.2d at 549 (citing Castillo v. E.I. Du Pont De Nemours & Co., Inc. , 854 So.2d 1264, 1275 (Fla. 2003) ). The Fourth District erred in disturbing the trial court's determination.
Next, R.J. Reynolds and Crane both challenged the trial court's denial of remittitur. We conclude that the Fourth District's application of a dissenting viewpoint[4] is inconsistent with our caselaw and, therefore, reject its reasoning.
For the foregoing reasons, we quash the Fourth District's decision. Furthermore, because the causation of mesothelioma is neither new nor novel, the trial court's acceptance of the expert testimony was proper. We therefore remand to the Fourth District with instructions to remand to the trial court to reinstate the final judgment. We decline to address the remaining issues.
It is so ordered.
PARIENTE, LEWIS, and LABARGA, JJ., concur.
PARIENTE, J., concurs with an opinion, in which LABARGA, J., concurs.
LABARGA, J., concurs with an opinion, in which PARIENTE, J., concurs.
CANADY, C.J., dissents with an opinion, in which POLSTON and LAWSON, JJ., concur.

We reject the argument that the Fourth District's decision cannot conflict with Marsh v. Valyou , 977 So.2d 543 (Fla. 2007), because it construes an earlier version of the statute. Marsh reaffirmed a procedural rule of the Court that the Legislature has limited authority to repeal. Indeed, Marsh did not construe section 90.702, Florida Statutes (2007), because the test established by Frye v. United State , 293 F. 1013 (D.C. Cir. 1923), was not codified within and, in fact, contradicted it. Accordingly, the conflict between Crane and Marsh is properly before this Court for our review.

We note, however, that in vigorous accompanying opinions, Justices Shaw and Boyd articulated reasons that public policy, alone, was insufficient to determine the substantive nature of a statutory provision. Justice Shaw, equally relevant to the instant case, was concerned with the rights of access to courts and would have found that the challenged statute denied "rights arising under article I, sections 9 and 21, of the Constitution of 1968." Id. at 885 (Shaw, J., concurring in part and dissenting in part). Justice Boyd would have continued to hold that the joinder of parties is a procedural matter pursuant to Shingleton . VanBibber , 439 So.2d at 886 (Boyd, J., dissenting); see also Smith v. Dep't of Ins. , 507 So.2d 1080, 1092 (Fla. 1987) (finding that statutes addressing the substantive rights of plaintiffs and defendants in civil litigation actions to recover damages did not encroach on the rulemaking authority of this Court).

We also note our concern that the amendment would affect access to courts much in the same way expressed by Justice Shaw in VanBibber by imposing an additional burden on the courts. The amici in this case have described the additional length and expense Daubert proceedings create. See, e.g., Kumho Tire Co., Ltd. v. Carmichael , 526 U.S. 137, 147-49, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

Crane Co. , 206 So.3d at 111 (citing R.J. Reynolds Tobacco Co. v. Townsend , 90 So.3d 307, 318 (Fla. 1st DCA 2012) (Wetherell, J., concurring in part and dissenting in part).