# Supreme Court of Florida

_____

No. SC2022-0094
_____

**CITIZENS OF THE STATE OF FLORIDA, etc.,**
Appellant,

vs.

**GARY F. CLARK, etc., et al.,**
Appellees.

November 9, 2023

GROSSHANS, J.

We have for review a decision of the Public Service
Commission allocating partial replacement power costs to Duke
Energy Florida, LLC.[1]  We affirm, finding that the Office of Public
Counsel (OPC) did not properly preserve its legal challenges and
therefore waived the arguments it now presents in this appeal.

I.

In December 2020, a coal-fired steam power plant operated by
Duke Energy Florida, LLC (DEF) unexpectedly went offline.  Before

_____

1. We have jurisdiction.  *See* art. V, § 3(b)(2), Fla. Const.

bringing the plant—known as CR4—back online, the operator needed to synchronize the generator's electrical parameters to the power grid.[2]

DEF operators first attempted automatic synchronization, but the effort failed. Roughly 10 minutes later, operators tried to perform a system reset by manually forcing a breaker to close. Under normal circumstances, the manual sync check relay[3] would prevent closure and return the unit to "automatic" mode, permitting additional automatic synchronization attempts. The manual sync check relay unexpectedly failed, and the breaker closed out of phase, harming the generator rotor and forcing an outage.

After the outage, DEF performed a Root Cause Analysis (RCA) to evaluate the factors contributing to the event and possible corrective measures. The RCA identified two primary causes:

---

2. Synchronization, which can be done either manually or automatically, involves (1) matching the generator voltage and frequency to the system voltage and frequency and (2) monitoring the phase angle to ensure the breaker close circuit is complete when the angle aligns.

3. A manual sync check relay is a device used to verify that two sides of a breaker match before closing.

(1) the failure of the manual sync check relay and (2) the operator's failure to follow written operational procedures.

DEF then petitioned the Public Service Commission for recovery of all its replacement power costs, arguing that DEF's actions were "reasonable and prudent" with respect to the factors leading to the forced outage. OPC and other parties challenged the petition.[4]

The Commission held an evidentiary hearing to resolve issues concerning DEF's prudence. To establish its prudence, DEF called one witness who testified that the operator's action plus the failed check relay led to the plant's damage.

After the hearing, the parties submitted additional arguments, and the Commission held an agenda conference. At this conference, the commissioners discussed, sua sponte but without objection, mitigating circumstances and the division of financial responsibility. Ultimately, the Commission unanimously voted to grant DEF's recovery of fifty percent of the replacement power costs associated with the CR4 outage.

---

4. The parties stipulated that DEF incurred $14.4 million in replacement costs due to the out-of-phase synchronization.

The Commission's six-page final order summarized the positions of the parties and evidence presented, noted that DEF bore the burden of proof, and concluded that two causes led to the outage. Notably, in making that conclusion, the Commission agreed that the operator's failure to follow written procedures directly led to the outage but found two "mitigating factors": the reliability of the manual sync check relay, and the operator's reliance on past success of the actions taken.

OPC filed a motion for reconsideration with the Commission. It asserted that the Commission's decision to consider mitigating factors was not authorized by law. OPC also argued that there was insufficient evidence and factual findings to support the equal division of financial responsibility. Prior to obtaining a ruling on the motion, OPC appealed to this Court for judicial review and subsequently withdrew the motion for reconsideration.

## II.

OPC raises a series of interrelated legal challenges questioning the authority of the Commission to assign partial costs and consider mitigating factors when making a prudence

determination.[5] It also argues that the Commission erroneously interpreted and applied the burden of proof. In response, DEF argues that these issues have not been preserved for our review. We agree with DEF's preservation arguments and affirm on that basis.

It is well established that issues not properly preserved are waived. *Sunset Harbour Condo. Ass'n v. Robbins*, 914 So. 2d 925, 928 (Fla. 2005) (holding that it is "not appropriate for a party to raise an issue for the first time on appeal"); *Tillman v. State*, 471 So. 2d 32, 35 (Fla. 1985); *see also DeLisle v. Crane Co.*, 258 So. 3d 1219, 1237 (Fla. 2018) (Canady, C.J., dissenting) ("Parties every day make choices in litigating cases that limit their options for review. And parties ordinarily must live with the choices they make."); *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) (The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as

---

5. To the extent that OPC separately advances a sufficiency of the evidence argument, that argument also does not support reversal.

arbiters of legal questions presented and argued by the parties before them.").

Parties are required to preserve arguments because it allows the lower tribunal to consider and resolve errors when they arise, rather than wait for the process of an appeal and expend the judicial resources that come with that procedure. *Harrell v. State*, 894 So. 2d 935, 940 (Fla. 2005) (stating that the purpose of the preservation rule is to notify the trial judge of possible error and offer a chance to correct it at an early stage); *Castor v. State*, 365 So. 2d 701, 703 (Fla. 1978). The preservation requirement also serves the purpose of treating the parties, the court, and the judicial system fairly. *City of Orlando v. Birmingham*, 539 So. 2d 1133, 1134 (Fla. 1989); *Eaton v. Eaton*, 293 So. 3d 567, 568 (Fla. 1st DCA 2020).

One specific preservation principle comes into play when a final order addresses substantive issues or reaches legal conclusions that have not been previously raised or challenged. If this occurs, a party must file a motion for rehearing to preserve

those alleged errors for appellate review.[6]  *Holland v. Cheney Bros., Inc.*, 22 So. 3d 648, 650 (Fla. 1st DCA 2009); *Morgan v. Am. Airlines*, 296 So. 3d 565, 566 (Fla. 1st DCA 2020).

These preservation principles are no less applicable in the context of formal administrative adjudication.  *Fla. Dep't of Bus. & Pro. Regul., Div. of Pari-Mutuel Wagering v. Inv. Corp. of Palm Beach*, 747 So. 2d 374, 385 (Fla. 1999) (applying the preservation requirement to review of a declaratory statement); *see also Stueber v. Gallagher*, 812 So. 2d 454, 456 (Fla. 5th DCA 2002) ("In administrative appeals a claim of error cannot be raised for the first time on appeal."); *Richards v. Dep't of Rev. Child Support Program*, 306 So. 3d 220, 221 (Fla. 3d DCA 2020) (discussing preservation requirement in administrative hearings).[7]

---

6. Though, generally, a challenge to a final order would be termed a "Motion for Rehearing," and a challenge to a nonfinal order termed a "Motion for Reconsideration," *see* Fla. R. Civ. P. 1.530, the Florida Administrative Code uses the word "reconsideration" when discussing challenges to final orders in the administrative context, *see* Fla. Admin. Code R. 25-22.060.

7. Our preservation requirement does not extend to determinations of whether there is competent substantial evidence supporting an order, or allegations of fundamental error.  *See* Fla. R. Civ. P. 1.530(e); *Pumphrey v. Dep't of Child. & Fams.*, 292 So. 3d 1264 (Fla. 1st DCA 2020).

In this case, the alleged legal errors—burden-shifting, misplaced reliance on mitigating circumstances, and division of financial responsibility—first appeared in the Commission's final order. Though OPC filed a motion for reconsideration, it withdrew the motion without giving the Commission a fair opportunity to correct the alleged errors raised in the motion. Thus, OPC failed to preserve these arguments. *See Pisano v. Mayo Clinic Florida*, 333 So.3d 782, 788 (Fla. 1st DCA 2022). This failure constrains our review—that is, we can only reverse if those errors rise to the level of fundamental error. *Aills v. Boemi*, 29 So. 3d 1105, 1109 (Fla. 2010). We have carefully reviewed the record and conclude that, even assuming error, that error would not be fundamental.

To reiterate, we do not discount the significance of the issues raised by OPC. Instead, our refusal to exempt OPC's arguments from the preservation requirement stems from our commitment to the critical interests served by preservation and the structural limitations on the scope of our appellate review of lower tribunal decisions.

III.

For the reasons stated above, we affirm the Final Order of the Public Service Commission.

It is so ordered.

MUÑIZ, C.J., and CANADY, COURIEL, and FRANCIS, JJ., concur.
MUÑIZ, C.J., concurs with an opinion.
LABARGA, J., concurs in result.
SASSO, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

MUÑIZ, C.J., concurring.

I concur in the Court's opinion but write briefly to clarify the preservation rule that dictates the outcome in this case.

The Court says that "[i]n this case, the alleged legal errors . . . first appeared in the Commission's final order." Majority op. at 8. "If this occurs," the Court says, "a party must file a motion for rehearing to preserve those alleged errors for appellate review." *Id.* at 6-7. As authority for this proposition, the Court cites two cases from the First District Court of Appeal: *Holland v. Cheney Bros., Inc.*, 22 So. 3d 648, 650 (Fla. 1st DCA 2009), and *Morgan v. Am. Airlines*, 296 So. 3d 565, 566 (Fla. 1st DCA 2020).

- 9 -

Those First District cases in turn relied on an earlier case that the Court does not cite, *Hamilton v. R.L. Best International*, 996 So. 2d 233 (Fla. 1st DCA 2008). *Hamilton* illuminates—and limits—the preservation principle in play here. The *Hamilton* court observed that "[m]ost issues are raised by an argument that is presented during the course of the proceeding and resolved in the final order." *Id*. at 234. The court went on: "In some instances, however, the issue may be one that arises for the first time in the final order itself." *Id*. *Hamilton* holds that, when an *issue* first appearing in the final order gives rise to asserted *error*, the aggrieved party must file a motion for rehearing as a predicate to seeking appellate review. *Id*.

The *Hamilton* principle applies in this case. The parties' post-hearing briefs took an all-or-nothing position. Each party assumed that the Commission faced a binary prudence determination and that the resulting award had to be zero or $14.4 million (the undisputed amount of the replacement power costs), depending on whether the utility met its burden of proof as to prudence. But the Commission itself, after a post-hearing discussion limited to Commission members and staff, decided to pursue a third path.

- 10 -

One commissioner encapsulated the group's thinking: "[T]his is one of those Solomon decisions, can you split the baby." The ensuing legal issues had not been litigated by the parties, who could not have anticipated that the Commission's final order would announce such an unorthodox approach.

Readers of the Court's opinion must bear this context in mind when applying today's precedent to preservation disputes involving alleged legal errors that "first appear" in a final order. The appellate issues that the Court today finds unpreserved are ones that the Commission itself created by resolving this case along lines that neither party advocated. Our decision today does not address preservation in the context of issues that are litigated by the parties and then resolved (correctly or not) in a final order.

An Appeal from the Florida Public Service Commission

Richard Gentry, Public Counsel, Mary A. Wessling, Associate Public Counsel, and Charles Rehwinkel, Deputy Public Counsel, Tallahassee, Florida,

for Appellant Citizens of the State of Florida

Keith C. Hetrick, General Counsel, Samantha M. Cibula, Attorney Supervisor, Margo A. DuVal, Senior Attorney, and Jonathan H. Rubottom, Senior Attorney, Florida Public Service Commission, Tallahassee, Florida,

for Appellee Florida Public Service Commission

Dianne M. Triplett, Matthew R. Bernier, and Stephanie A. Cuello of Duke Energy Florida LLC, Tallahassee, Florida; Michael P. Silver and Alyssa L. Cory of Shutts & Bowen LLP, Tampa, Florida; and Daniel E. Nordby of Shutts & Bowen LLP, Tallahassee, Florida,

for Appellee Duke Energy Florida, LLC